Misty ATCHLEY, Plaintiff,

v.

**LIFE CARE CENTER OF CLEVELAND,**
Defendant.

No. 03S01–9312–CH–00077.

Supreme Court of Tennessee,
at Knoxville.

Sept. 5, 1995.

Roger E. Jenne, Jenne, Scott & Bryant, Cleveland, for plaintiff.

G. David Allen, Sean Antone Hunt, Leitner, Warner, Moffitt, Williams, Dooley, Carpenter & Napolitan, Chattanooga, for defendant.

Tennessee Trial Lawyers Association, Lynn Bergwerk, Farmer & Bergwerk, Knoxville, for amicus curiae.

## OPINION

DROWOTA, Justice.

We granted review of the Special Workers' Compensation Appeals Panel decision pursuant to Tenn.Code Ann. § 50–6–225(e)(5)(A), in order to determine, *inter alia*, whether the provisions contained in Tenn.Code Ann. § 50–6–241(a)(1) [the multiplier statute], limiting an employee's permanent partial disability award to two and one-half (2½) times the medical impairment rating in cases in which the pre-injury employer returns the employee to employment at a wage equal to or greater than the wage the employee was receiving at the time of the injury, apply to injuries involving scheduled members.

*FACTS AND PROCEDURAL HISTORY*

The plaintiff, Misty Atchley, brought suit against the defendant, Life Care Center of Cleveland (Life Care), for workers' compensation benefits growing out of a work related injury received November 28, 1992. Plaintiff was employed by Life Care as a nursing assistant. While making the bed of a patient, she was injured when she hit her right knee against a bed rail and knocked her knee out of joint. She was taken by ambulance to Bradley Memorial Hospital's emergency room where the doctors relocated her knee and released her.

The plaintiff had a congenital defect in the cap of her right knee. The knee cap was misaligned and did not cover the front of the knee, but lay somewhat to the side, making the knee prone to come out of joint as it had done on two previous occasions, once while she was swimming in 1988 and again in 1989 while she was dancing.

About a week after the accident occurred, the plaintiff went to see Dr. William Donaldson, an orthopedic surgeon in Chattanooga. He stated that plaintiff had a "recurrent dislocation of the right patella, or knee cap."

This condition of the knee cap, as described by Dr. Donaldson, was not the result of the accident of November 28 but was a congenital condition which made the knee prone to come out of joint. This condition can be corrected by arthroscopic surgery. Dr. Donaldson testified that plaintiff had noticeable medial retinaculum tenderness on the inner side of the knee cap. He took x-rays and concluded that the plaintiff might be helped by a surgical procedure, "arthroscopic lateral release." He did not recommend surgery on the initial visit; however, in February he did recommend surgery. In explaining his recommendation, Dr. Donaldson said: "Well, this wasn't a first time dislocation.... I'm talking about third frank dislocation, not just a mild halfway dislocation or subluxation. That was not likely to improve significantly with conservative care with bracing and therapy and muscle reeducation. She actually had a significant amount of muscular atrophy even by that time. So I felt at that point that, at least by March of 1993, after a couple of follow-up visits, that surgery was what was indicated."

The surgery was performed in March, 1993. Dr. Donaldson testified the plaintiff tolerated the surgery very well. He said, "The patient did have a dramatic reduction in partello femoral joint angle. Things looked better. Her knee cap looked more well aligned." He further stated: "She might need a later imbrication, or advancement of that part of the muscle onto the patella, which would have to be an open procedure." He further testified: "This would be related to the outcome she got from our surgical procedure."

The trial court found plaintiff sustained an injury arising out of and in the scope and course of her employment with the defendant. The plaintiff was awarded eight weeks temporary total disability benefits, all medical expenses and permanent partial disability of 25% to the right leg.

The employer appealed, alleging (1) that plaintiff's surgery was not compensable and (2) that the award of 25% permanent partial disability to the lower right extremity was excessive. The case was referred to a Special Workers' Compensation Appeals Panel for findings of fact and conclusions of law pursuant to Tenn.Code Ann. § 50–6–225(e)(3). The Special Panel found the surgery compensable; however, it found the award of 25% disability to plaintiff's right extremity to be excessive and reduced the award to 5%.

## ANALYSIS

### A.

We agree with the Panel's conclusion that plaintiff's surgery was compensable. We also agree with the Panel's findings and conclusions as to plaintiff's disability. The Panel found as follows:

> Although Dr. Donaldson did not base his opinion on the AMA guidelines, he estimated the Plaintiff had a permanent anatomical disability of 1% to 2%. Based on the recurrent tendency of the right knee to become dislocated, he gave a 15% to 20% impairment to the right extremity. The basis of his 1% to 2% disability was founded on the fact that each time the knee became dislocated it makes it more susceptible to becoming dislocated again. The only restriction Dr. Donaldson placed on the Plaintiff's activities was 'no repetitive squatting or lifting heavy objects with the knee flexed.'

> . . . . .

> In the case at bar, the trial court made no findings of fact on which he based his award of 25% permanent partial disability to Plaintiff's right extremity. He only made the conclusionary statement: '[A]nd assesses 25 percent to the extremity.' We find the record fails to support such an award.

. . . . .

After the accident, Plaintiff returned to work with Life Care. She remained in that employment until she voluntarily quit. After leaving Life Care she returned to the job as cashier for Food Max, which is the same job she held prior to going to work for Life Care. She works only 20 to 24 hours per week, but that is because she is going to college. The record is devoid of any proof that the Plaintiff has suffered

any vocational disability beyond the 1% to 2% attributed to her by Dr. Donaldson. The judgment of the chancellor is modified to award the Plaintiff 5% permanent partial disability instead of 25% disability to her right leg.

The record consists of the testimony of the plaintiff and the deposition of Dr. Donaldson. Dr. Donaldson stated that only one to two percent of his impairment rating was related to the dislocation which occurred while she was working for Life Care. From our review of the record, we concur with the above findings and conclusions of the Panel.

### B.

The Panel, however, did not stop with the above findings of fact and conclusions of law but stated in its final paragraph that:

There is also another compelling reason why the award of 25% disability cannot stand. The accident occurred on November 28, 1992. Tenn.Code Ann. § 50–6–241 (1993 Sup.) became effective as to injuries arising after August 1, 1992. Since Plaintiff returned to full employment with Life Care 10 days after her surgery, her recovery cannot exceed 2.5 times her medical impairment rating.

It was because of the Panel's dicta in the final paragraph and because of the importance of the issue raised that review by the entire Court was requested pursuant to Tenn.Code Ann. § 50–6–225(e)(5)(A). By further order, pursuant to § 225(e)(6), we requested that the parties submit supplemental briefs "addressing the question of whether the two and one-half multiplier contained in Tenn.Code Ann. § 50–6–241(a)(1) applies to injuries to scheduled members." It is interesting to note that this issue was not raised in the trial court nor before the Special Workers' Compensation Appeals Panel.

The multiplier issue as it applies to injuries to scheduled members is an important issue for the bench and bar because of its frequent application. The Tennessee Trial Lawyers Association (TTLA) was allowed to submit an *amicus curiae* brief to address this issue. The defendant, Life Care, and the *amicus curiae* TTLA, provided the Court with extensive legislative history of Public Chapter 900 of 1992 (House Bill 2519 and Senate Bill 2526).

Tenn.Code Ann. § 50–6–241(a)(1) [part of Public Chapter 900] reads in pertinent part as follows:

For injuries arising on or after August 1, 1992, in cases where an injured employee is eligible to receive any permanent partial disability benefits, *pursuant to § 50–6–207(3)(A)(i) and (F)*, and the pre-injury employer returns the employee to employment at a wage equal to or greater than the wage the employee was receiving at the time of injury, the maximum permanent partial disability award that the employee may receive is two and one-half (2½) times the medical impairment rating. (emphasis added).

By its own terms, the foregoing multiplier statute applies only to those employees who are eligible to receive "any permanent partial disability benefits, pursuant to §§ 50–6–207(3)(A)(i) and (F)."

Section 50–6–207(3)(A)(i) reads as follows:

(A) In case of disability partial in character but adjudged to be permanent, there shall be paid to the injured employee, in addition to the benefits provided by § 50–6–204, [medical benefits] the following:

(i) Sixty-six and two-thirds percent (66⅔) of such injured employee's average weekly wages for the period of time during which such injured employee suffers temporary total disability on account of the injury, the same being subject to the same limitation as to minimum and maximum as provided in subdivision (1). [subdivision (1) is entitled Temporary Total Disability.]

This section grants permanently partially disabled employees the right to draw temporary total disability benefits in addition to permanent partial disability benefits which are set out elsewhere in the statute.

Section 50–6–207(3)(F), the other section referenced by the multiplier statute, provides:

All other cases of permanent partial disability not above enumerated shall be apportioned to the *body as a whole*, which

shall have a value of four hundred (400) weeks, there shall be paid compensation to the injured employee for the proportionate loss of use of the body as a whole resulting from the injury. . . . The benefits provided by this paragraph shall not be awarded in any case where benefits for a specific loss are otherwise provided in this chapter. (emphasis added).

These benefits to the "body as a whole" are distinguished from benefits for a "specific loss." Benefits for a specific loss relate to scheduled members and are set out in Section 50–6–207(3)(A)(ii)–(ff), and (B) through (E).

The defendant argues that the multiplier statute must apply to scheduled members in some way because the statute refers to Section 50–6–207(3)(A)(i), which, in turn, is connected by the word "and" to Section 50–6–207(3)(A)(ii), which deals with injuries to scheduled members. The defendant then argues, after citing material in the legislative debates, that the legislature intended that the multiplier statute apply to "injuries to" scheduled members, which is dealt with in Section 50–6–207(3)(D), not injuries involving the "total loss" of a scheduled member, which we dealt with in Section 50–6–207(3)(A)(ii)(a)–(ff). Therefore, the defendant reasons that the reference to Section 50–6–207(3)(A)(i) in the statute should actually be to Section 50–6–207(3)(D); and it asks this Court to substitute Section 50–6–207(3)(D) for Section 50–6–207(3)(A)(i). The defendant concludes that to allow a "typographical error" to make the cap inoperable to injuries to scheduled members would defeat the intent of the General Assembly.

The defendant cites material from the legislative debates to support this argument. Our review of these materials, however, does not suggest that the legislature made a typographical error in its omission of (ii)(a)–(ff). In fact, the legislative history does not provide clear support for the position of either party. Thus, we resolve this issue based on the language of the statute.

 When a statute is unambiguous, it must be interpreted according to its plain meaning. *McClain v. Henry I. Siegel Co.,* 834 S.W.2d 295 (Tenn.1992) (citing *Federal Express Corp. v. Woods,* 569 S.W.2d 408, 410 (Tenn.1978)). The plain language of the multiplier statute refers to Section 50–6–207(3)(A)(i), a provision that grants *any* injured employee, not just those suffering an injury to scheduled members as defined in Section 50–6–207(3)(A)(ii), the right to draw temporary total disability benefits in addition to permanent partial disability benefits. Since the legislature did not *specifically* refer to injuries to scheduled members in the multiplier statute, as it certainly could have, we conclude that the legislature did not intend that the multipliers be applied in cases involving injuries to scheduled members. We find that the multiplier statute explicitly applies to injuries to the body as a whole, and not to scheduled members.

The judgment of the trial court is affirmed in part, reversed in part and remanded. Costs are taxed against the defendant.

ANDERSON, C.J., and REID, BIRCH and WHITE, JJ., concur.