# IN THE SUPREME COURT OF TENNESSEE
## AT NASHVILLE
### October 5, 2005 Session

## CATHERINE LAYMAN v. VANGUARD CONTRACTORS, INC., ET AL.

**Appeal from the Circuit Court for Montgomery County**
**No. 50000014      Ross H. Hicks, Judge**

---

### No. M2004-01918-SC-R3-CV - Filed January 18, 2006

---

The plaintiff sought workers' compensation benefits for both cognitive impairment and a disfiguring scar resulting from a work-related accident. We conclude that the evidence does not preponderate against the trial court's conclusion that the plaintiff did not suffer cognitive impairment as a result of the accident. With regard to the benefits for disfigurement, the trial court erred in calculating benefits as an award to the body as a whole pursuant to Tennessee Code Annotated section 50-6-207(3)(F) (1999). Injuries for disfigurement are instead governed by Tennessee Code Annotated section 50-6-207(3)(E) (1999), which limits the benefits for disfigurement to 200 weeks. Because the plaintiff's disfigurement may not be classified as an injury to the body as a whole, the trial court erred in limiting the award to two and one-half times the impairment rating as set forth in Tennessee Code Annotated section 50-6-241(a)(1) (1999). After an independent review of the evidence, we conclude that the evidence supports a vocational disability of 20% due to the disfigurement. Accordingly, the trial court's judgment is affirmed as modified, and the case is remanded to the trial court for further proceedings consistent with this opinion.

**Tenn. Code Ann. 50-6-225(e)(3); Judgment of the Trial Court Affirmed as Modified;**
**Remanded**

JANICE M. HOLDER, J., delivered the opinion of the court, in which WILLIAM M. BARKER, C.J., and E. RILEY ANDERSON, ADOLPHO A. BIRCH, JR., and CORNELIA A. CLARK, JJ., joined.

William Lamar Aldred, Jr., Clarksville, Tennessee, for the Plaintiff-Appellant, Catherine Layman.

Richard Charles Mangelsdorf, Jr., Nashville, Tennessee, for the Defendants-Appellants, Vanguard Contractors, Inc. and Lumberman's Underwriting Alliance.

### OPINION

On November 19, 1999, the plaintiff, Catherine Layman ("Layman"), was employed by the defendant, Vanguard Contractors ("Vanguard"), as a laborer in its concrete division. Layman was using a core drill to drill a hole into a concrete slab when the drill caught on an unidentified object.

As Layman reached down to turn off the drill, the back of the drill lifted up, striking her on the head and knocking her to the ground. The resulting laceration required fifty-five stitches. Layman now has a scar on the left side of her head extending from her eyebrow into her hairline.

Following the accident, Layman did not return to work for three days. She then returned to work with restrictions and was released to full duty on December 6, 1999. On February 25, 2000, Layman submitted to a drug test, which was positive for marijuana. Consistent with Vanguard's policy, Layman was suspended and given thirty days to pass another drug test. Layman did not take a second drug test, and her employment with Vanguard was terminated.

Layman sought workers' compensation benefits based upon cognitive impairment due to a "closed head injury" and disfigurement. The trial court found that Layman failed to establish that she suffered a closed head injury or cognitive impairment as a result of the accident. The trial court concluded, however, that Layman sustained permanent disfigurement as a result of her injury and assigned an impairment rating of 4% to the body as a whole. See Tenn. Code Ann. § 50-6-207(F) (1999). Finding that Layman had made a meaningful return to work, the trial court awarded the maximum benefit of two and one-half times Layman's impairment rating, assigning Layman a vocational disability of 10% to the body as a whole. See Tenn. Code Ann. § 50-6-241(a)(1) (1999). The trial court awarded Layman permanent partial disability benefits based upon forty weeks at her stipulated compensation rate of $314.55 per week.

Both parties appealed, and the appeal was referred to the Special Workers' Compensation Appeals Panel pursuant to Tennessee Code Annotated section 50-6-225(e)(3) (2005). Following oral argument before the Panel, this case was transferred to the full Court for review.

## ANALYSIS

### A. Cognitive Impairment

We first address whether the trial court erred in concluding that Layman did not suffer cognitive impairment as a result of the November 19, 1999 accident. An employee who suffers mental impairment resulting from physical trauma to the brain may be compensated under the Workers' Compensation Act.[1] Ivey v. Trans Global Gas & Oil, 3 S.W.3d 441, 447 (Tenn. 1999).

---

[1] The current definition of "injury" or "personal injury" under the Workers' Compensation Act includes "a mental injury arising out of and in the course of employment." Tenn. Code Ann. § 50-6-102(13) (2005). A "mental injury" is defined as

> a loss of mental faculties or a mental or behavioral disorder where the proximate cause is a compensable physical injury resulting in a permanent disability, or an identifiable work-related event resulting in a sudden or unusual mental stimulus. A mental injury shall not include a psychological or psychiatric response due to the loss of employment or employment opportunities.

Id. at (16).

The trial court based its ruling upon the deposition testimony of Dr. Paresh Sheth and Dr. Richard Rubinowicz. Dr. Sheth, a neurologist, examined Layman on January 14, 2000, approximately two months following the accident. Dr. Sheth testified that Layman complained primarily of headaches and neck pain. She did not complain of memory loss or other symptoms of cognitive impairment. Dr. Sheth did not find evidence of cognitive defects during his examination, and the MRI ordered by Dr. Sheth was normal. Dr. Sheth found that Layman had not suffered permanent impairment with regard to her mental faculties.

Dr. Rubinowicz, a neurologist, examined Layman on July 16, 2003, after Layman was referred by Vanguard's counsel for an independent medical evaluation. In evaluating Layman, Dr. Rubinowicz reviewed records from Dr. Sheth, a neuropsychological profile developed by Dr. James Hebda over three testing sessions, and records from Dr. Blaise Ferraraccio regarding his November 7, 2002 examination of Layman. Dr. Rubinowicz conducted a complete neurologic examination on Layman and arranged an examination by a neuropsychologist.

Based upon Layman's injury, evaluations of other physicians, and his evaluation, Dr. Rubinowicz testified that he observed no evidence suggesting that Layman suffered cognitive impairment as a result of the accident that occurred on November 19, 1999. Dr. Rubinowicz explained that memory loss occurs immediately after a closed head injury and is permanent. Layman did not demonstrate symptoms of cognitive dysfunction when Dr. Sheth examined her two months after her accident. The initial symptoms of memory dysfunction were identified more than two years after the accident when Layman was evaluated by Dr. Hebda. Dr. Rubinowicz further stated that a manifestation of cognitive defects after such a period of time is inconsistent with a closed head injury. Based upon the AMA Guides, Dr. Rubinowicz opined that Layman did not suffer a permanent impairment due to any mental disorder connected to the accident. He did not assign any permanent restrictions as to Layman's physical or work activities. Dr. Rubinowicz further stated that if Layman were suffering from a cognitive impairment, such impairment was caused by her depression.

The trial court also accredited the testimony of two lay witnesses, Andrew Fleming ("Fleming") and Paul Phitzer ("Phitzer"). Fleming is the president of Fleming Transfer and Storage Company, where Layman was employed on a periodic basis from April 2001 until December 2002. Fleming testified he was unaware Layman suffered from memory loss and never observed Layman exhibiting personality problems during her term of employment. He described Layman as a good, organized, and loyal employee whom he would be willing to rehire. Phitzer was the foreman of Vanguard's concrete crew at the time of Layman's accident in 1999. Phitzer testified that he did not observe any physical limitations, memory problems, or changes in Layman's personality when she returned to full duty following the accident.

Layman contends that the trial court erred in failing to give greater weight to the deposition testimony of Dr. Blaise Ferraraccio, a neurologist who conducted an independent medical examination of Layman on November 7, 2002, at the request of Layman's counsel. Dr. Ferraraccio

opined that the cognitive impairment found by Dr. Hebda's testing was causally related to the head injury that Layman sustained on November 19, 1999.

Layman also submits that the testimony of her lay witnesses, Cynthia Case ("Case") and Debbie O'Bryan ("O'Bryan"), should have been accredited by the trial court. Case and O'Bryan have known Layman for more than fifteen years. They testified that Layman was happy, energetic, and outgoing and did not experience any memory problems prior to the accident. Following the accident, they reported that Layman experienced mood swings, problems with her memory, and an inability to sleep. Layman also complained of headaches and inner ear pain. Layman maintains that the testimony of Case and O'Bryan corroborates her testimony concerning her memory problems and other mental deficiencies following the accident.

In a workers' compensation case, our standard of review of questions of law is de novo without a presumption of correctness as to the trial court's findings. Perrin v. Gaylord Entm't Co., 120 S.W.3d 823, 825 (Tenn. 2003). We review factual issues de novo upon the record of the trial court, accompanied by a presumption of correctness of the trial court's factual findings, unless the preponderance of the evidence is otherwise. Tenn. Code Ann. § 50-6-225(e)(2) (2005). When the trial court has observed the witnesses and heard their testimony, especially where issues of credibility and the weight of testimony are involved, we must extend considerable deference to the trial court's findings regarding that testimony. Whirlpool Corp. v. Nakhoneinh, 69 S.W.3d 164, 167 (Tenn. 2002). Therefore, the trial court's decision to accredit the testimony of Fleming and Phitzer over the testimony of Case and O'Bryan is entitled to considerable deference on appeal.

In reviewing documentary evidence, such as expert medical testimony presented by deposition, we extend no deference to the trial court's findings. Id. Ultimately, we must conduct an independent review of the evidence to determine where the preponderance of the evidence lies. See Tenn. Code Ann. § 50-6-225(e)(2) (2005); Cleek v. Wal-Mart Stores, Inc., 19 S.W.3d 770, 773-74 (Tenn. 2000). Our review of the record leads us to conclude that the trial court did not err in accrediting the deposition testimony of Dr. Sheth and Dr. Rubinowicz over the deposition testimony of Dr. Ferraraccio.

Although Layman complained of depression and headaches in November of 2000 and received treatment for her complaints from Dr. Sheth, Layman did not assert that she had sustained a closed head injury until her attorney referred her for psychological testing almost three years after the accident. The trial court accredited the testimony of Dr. Sheth and Dr. Rubinowicz and found "a huge void" in the medical evidence between the time that Layman received treatment from Dr. Sheth and the time that Layman was referred for psychological testing. We hold that the evidence does not preponderate against the trial court's finding that Layman failed to establish that she suffered a closed head injury or that she suffered a cognitive impairment as a result of the injury.

## B. Disfigurement

We next turn to the trial court's award regarding Layman's disfiguring scar. Tennessee Code Annotated section 50-6-207(3)(F) (1999), upon which the trial court based its award, states in pertinent part that

> [a]ll other cases of permanent partial disability *not above enumerated* shall be apportioned to the body as a whole, which shall have a value of four hundred (400) weeks, and there shall be paid compensation to the injured employee for the proportionate loss of use of the body as a whole resulting from the injury.

(Emphasis added). Permanent partial disability benefits for injury to the body as a whole are available under this section only when the injury is to a portion of the body not statutorily scheduled, affects a particular combination of members not statutorily provided for, or causes permanent injury to an unscheduled portion of the body. Dotson v. Rice-Chrysler-Plymouth-Dodge, Inc., 160 S.W.3d 495, 501 (Tenn. 2005); Thompson v. Leon Russell Enters., 834 S.W.2d 927, 929 (Tenn. 1992).

Disfigurement to the head, face, or hands is a statutorily enumerated injury for which permanent partial disability benefits are available pursuant to Tennessee Code Annotated section 50-6-207(3)(E) (1999). See Atchley v. Life Care Ctr. of Cleveland, 906 S.W.2d 428, 431 (Tenn. 1995) (classifying section 50-6-207(3)(E) as a scheduled member injury). Section 50-6-207(3)(E) provides that permanent partial disability benefits may be awarded for

> serious disfigurement to the head, face or hands, not resulting from the loss of a member or other injury specifically compensated, so altering the personal appearance of the injured employee as to materially affect such injured employee's employability in the employment in which such injured employee was injured or other employment for which such injured employee is then qualified, sixty-six and two-thirds percent (66 2/3%) of the average weekly wages for such person as the court may determine, *not exceeding two hundred (200) weeks*.

(Emphasis added).

Because the award for disfigurement is statutorily enumerated, Layman's permanent partial disability benefits are not limited by Tennessee Code Annotated section 50-6-241(a)(1) (1999). Section 50-6-241 limits an employee's recovery of benefits depending upon the employee's return to work with the pre-injury employer at a wage equal to or greater than the employee's pre-injury wage.[2] This limitation applies only to permanent partial disability benefits awarded "pursuant to

---

[2] At the time of Layman's injury, an employee's permanent partial disability benefits under certain circumstances were limited to two and one-half times the medical impairment rating if the employee made a meaningful return to work and six times the impairment rating if the employee did not make a meaningful return to work. Tenn. Code Ann. § 50-6-241(a)(1), (b) (1999); Lay v. Scott County Sheriff's Dep't, 109 S.W.3d 293, 297 (Tenn. 2003). The
(continued...)

§ 50-6-207(3)(A)(i)and (F)."[3] Tenn. Code Ann. § 50-6-241(a)(1), (b) (1999). The plain language of section 50-6-241 does not limit permanent partial disability benefits awarded for disfigurement under section 50-6-207(3)(E).[4] See Davis v. Reagan, 951 S.W.2d 766, 769 (Tenn. 1997) (holding that the limitations in section 50-6-241 do not apply to awards of permanent total disability); Atchley, 906 S.W.2d at 431 (concluding that pursuant to the plain language of the statute, the multipliers do not apply to injuries involving scheduled members under section 50-6-207(3)(A)(ii)).

An employee seeking workers' compensation benefits due to disfigurement bears the burden of proving that she sustained a serious disfigurement, that the disfigurement materially affects the employment, that the condition is permanent, and that a work-related injury caused the disfigurement. Wilkes v. Res. Auth. of Sumner County, Tenn., 932 S.W.2d 458, 462 (Tenn. 1996). It is clear from the record that Layman's scar is a serious disfigurement. The injury required fifty-five stitches and resulted in a scar extending from Layman's eyebrow to her hairline. The permanency of Layman's disfigurement has been established by medical testimony, and it is undisputed that the disfigurement was caused by a work-related injury.

The extent of the permanent partial disability benefits available to Layman for disfigurement, therefore, is dependent upon whether her scar has materially affected her employability. Id. at 463. As used in Tennessee code Annotated section 50-6-207(3)(E), "employability" is "the physical and mental ability to obtain and maintain employment, as well as the physical and mental abilities that the job demands." Id. This definition of "employability" recognizes not only the physical aspects but also the mental, emotional, and communicative aspects of obtaining and maintaining employment. Id.

---

[2](...continued)
General Assembly has amended the statute to reduce the two and one-half multiplier to one and one-half times the medical impairment rating for injuries occurring on or after July 1, 2004. Tenn. Code Ann. § 50-6-241(d)(1)(A) (2005). Although the parties dispute whether Layman made a meaningful return to work, our decision does not require determination of this issue.

[3] Tennessee Code Annotated section 50-6-207(3)(A)(i) (1999) allows partially disabled employees to obtain temporary total disability benefits in addition to permanent partial disability benefits that are provided elsewhere in the statute. See Atchley, 906 S.W.2d at 430.

[4] Under the amended version of Tennessee Code Annotated section 50-6-241, the multipliers now apply to "cases in which an injured employee is eligible to receive any permanent partial disability benefits either for body as a whole or for schedule member injuries, except schedule member injuries specified in § 50-6-207(3)(A)(ii)(a)-(l), (n), (q), and (r)." See Tenn. Code Ann. § 50-6-241(d)(1)(A), (d)(2)(A) (2005). We express no opinion regarding whether this amended statute permits application of the multipliers to permanent partial disability awards for disfigurement pursuant to Tennessee Code Annotated section 50-6-207(3)(E).

Layman was forty-one years old at the time of trial and has neither a high school diploma nor a GED. The trial court accredited the unrefuted C-32 form of Dr. Harry Creekmore,[5] a plastic surgeon who assigned an impairment rating of 4% to the body as a whole due to disfigurement. The presence of the scar caused Layman to become so self-conscious that she styles her hair to hide her scar. See id. (considering the employee's self-consciousness and attempts to conceal the disfigurement in determining vocational disability). Some of Layman's co-workers at Vanguard referred to her as "scar face." Layman's scar also affected her ability to comfortably wear a hard hat. The safety regulations at Vanguard mandated the use of a hard hat. The hat irritated Layman's scar, and she was unable to obtain relief unless she removed the hard hat.

The evidence does not demonstrate that Layman's scar affected her ability to obtain employment in industries that do not require the continuous use of a hard hat. Following her termination at Vanguard, Layman worked as a bartender, a packer for a moving company, a house cleaner, an electrician's aid, and a restorer of items damaged by fire or water. Fleming, who employed Layman as a packer, testified that Layman's scar did not affect his decision to hire Layman or Layman's ability to perform her duties of employment. These jobs, however, all compensate Layman at a rate significantly less than she was able to earn at Vanguard and at similar employment requiring the continuous use of a hard hat.

After careful consideration of the record, we conclude that this evidence supports a vocational disability rating of 20% due to Layman's disfigurement. Applying this vocational disability rating to the 200-week benefit limitation for disfigurement in Tennessee Code Annotated section 50-6-207(3)(E) (1999), we award Layman forty weeks of permanent partial disability benefits at the stipulated rate of $314.55 per week.

## CONCLUSION

The evidence does not preponderate against the trial court's finding that Layman did not suffer a cognitive impairment as a result of the accident. We conclude, however, that the trial court erred in calculating the benefits for disfigurement as an award to the body as a whole and that benefits should be awarded based upon disfigurement pursuant to Tennessee Code Annotated section 50-6-207(3)(E) (1999). Our independent review of the evidence supports an award of 20% vocational disability for the disfigurement. Applying the 200-week benefit limitation for disfigurement in Tennessee Code Annotated 50-6-207(3)(E) (1999), entitles Ms. Layman to forty weeks of compensation at her stipulated compensation rate. Accordingly, the trial court's judgment is affirmed as modified, and the case is remanded to the trial court for further proceedings consistent with this opinion.

---

[5] This form was included in the technical record and relied upon by the trial court in its ruling. We have held that a trial court's reliance upon a document contained in the technical record may be sufficient to place the record into evidence. See State v. Bobadilla, __ S.W.3d __ (Tenn. 2005). The better practice, however, is to mark the document as a trial exhibit.

Costs of appeal are divided equally between the appellant, Catherine Layman, and the appellees, Vanguard Contractors, Inc. and Lumberman's Underwriting Alliance, and the parties' sureties, for which execution may issue if necessary.

_____
JANICE M. HOLDER, JUSTICE