**James R. SEIBER**

v.

**REEVES LOGGING et al.**

Supreme Court of Tennessee, at Nashville.

Feb. 5, 2009 Session.

May 1, 2009.

Robert E. Cooper, Jr., Attorney General and Reporter; Dianne Stamey Dycus, Deputy Attorney General; and Juan G. Villaseñor, Assistant Attorney General (on appeal); and Ronald W. McNutt, Assistant General Counsel (at trial), for the appellant, Second Injury Fund.

John D. Burleson and James V. Thompson, Jackson, Tennessee, for Reeves Logging.

Richard T. Matthews, Columbia, Tennessee, for the appellee, James R. Seiber.

## OPINION

WILLIAM C. KOCH, JR., J., delivered the opinion of the court, in which JANICE M. HOLDER, C.J., CORNELIA A. CLARK, GARY R. WADE, and SHARON G. LEE, JJ., joined.

This appeal involves the Second Injury Fund's obligation to pay workers' compensation benefits to an employee whose employer did not have workers' compensation liability insurance when the employee sustained a work-related injury that left him permanently and totally disabled. The employee filed suit against his employer in the Circuit Court for Wayne County seeking workers' compensation benefits. Because he had sustained a previous work-related injury, the employee also named the director of the Second Injury Fund as a defendant. Following a bench trial, the trial court concluded that the employee's injury had left him "permanently and totally occupationally disabled." The trial court awarded the employee $286,616 and allocated 15% of the liability to the employer and 85% to the Second Injury Fund. After both the employer and the Second Injury Fund appealed, the employee settled his claim against the employer. This Court elected to hear the case directly in accordance with Tenn.Code Ann. § 50–6–225(e)(1) (2008). We have determined that the trial court erred by requiring the Second Injury Fund to pay workers' compensation benefits to the employee because the employer was not "properly insured" within the meaning of Tenn.Code Ann. § 50–6–208(a)(2) (2008) when the employee was injured.

## I.

Leon Reeves has owned and operated Reeves Logging, a small commercial logging business located in Hohenwald, Tennessee, for over thirty years. For most of this time, he did not regularly employ more than four persons[1] and did not obtain workers' compensation liability insurance coverage for his employees. However, he obtained workers' compensation liability coverage in June 2002 when he entered into a contract with Coastal Lumber Company that required him to

---

1. The testimony at trial conflicts with regard to the number of employees working for Reeves Logging in 2007 when Mr. Seiber was injured. Mr. Seiber testified that five persons were working for Reeves Logging. Mr. Reeves testified that no more than four were employed at any one time. The trial court found that "Reeves Logging had at least five employees in 2007, but less than five such employees [were] working at the time of the plaintiff's last injury in June of 2007."

obtain workers' compensation liability insurance. By doing so, Mr. Reeves voluntarily elected to be subject to the Workers' Compensation Law.[2]

Mr. Reeves ended his contract with Coastal Lumber Company after it proved to be unprofitable. On January 28, 2003, he discontinued the workers' compensation liability insurance coverage because he could not afford it. However, when Mr. Reeves discontinued the coverage, he did not file the required I–9 form with the Tennessee Department of Labor and Workforce Development, notifying the Department of the withdrawal of his voluntary election to accept the provisions of the Tennessee Workers' Compensation Law.

James Russell Seiber, who was related to Mr. Reeves by marriage, worked "off and on" for Reeves Logging for at least twenty years. When he was not working for Reeves Logging felling trees or operating a skidder,[3] Mr. Seiber performed heavy manual labor working in saw mills, steel mills, and mechanic shops. On July 12, 2005, while working for Reeves Logging, Mr. Seiber was seriously injured when he was run over by a skidder. He was hospitalized for three months and did not return to work until January 2007. His treating physician characterized his injuries as "life-altering." Even though Mr. Seiber did not seek workers' compensation benefits for these injuries, his physician estimated that his 2005 injuries resulted in a twenty percent impairment to the body as a whole.

Mr. Reeves made some accommodations for Mr. Seiber when he returned to work in January 2007. Mr. Seiber drove a grapple skidder that required him to climb on and off the equipment less frequently than the choke skidder he had previously operated. Mr. Seiber also cut timber when his 2005 injuries prevented him from climbing on and off the skidder. Mr. Seiber was injured again on June 15, 2007, when a log hit him on the left knee and propelled him into some wood. He sustained a permanent injury to his left knee and aggravated his 2005 back injury.

On October 3, 2007, approximately four months after Mr. Seiber's second work-related injury, Mr. Reeves belatedly filed an I–9 form with the Division of Workers' Compensation, signifying his withdrawal from his voluntary election in 2002 to come under the Workers' Compensation Law. Two weeks later, on October 16, 2007, Mr. Seiber filed suit against Reeves Logging in the Circuit Court for Wayne County seeking workers' compensation benefits. He also named the director of the Second Injury Fund as a defendant because he had sustained a previous disabling injury in 2005.

Mr. Reeves responded by asserting that he was not liable for workers' compensation benefits because he was not "bound by the Tennessee Workers' Compensation Act" and that Mr. Seiber's most recent injury had "resulted in little, if any, permanent impairment." The Second Injury Fund also denied that it was liable to Mr. Seiber. On February 13, 2008, the Second Injury Fund filed a motion for summary judgment on the ground that it is liable to pay workers' compensation benefits under Tenn.Code Ann. § 50–6–208(a)(2) (2008)

---

**2.** Employers who employ fewer than five persons are exempt from the Workers' Compensation Law. However, they may voluntarily "accept" the application of the Act by filing a written notice of acceptance with the Division of Workers' Compensation. Tenn.Code Ann. §§ 50–6–102(11), –106(5) (2008).

**3.** A skidder is a heavy, four-wheeled tractor used for hauling timber. Mr. Seiber testified that operating a skidder involves climbing on and off the machine frequently.

only when "there is actual [workers' compensation] insurance in place."

The trial court conducted a hearing on April 7, 2008. It first turned its attention to the Second Injury Fund's motion for summary judgment. The court denied the Second Injury Fund's motion and found that (1) "the employer gave no notice to the Department of Labor of its intent to withdraw under the Workers' Compensation Act until the Form I–9 was filed ... on September 26, 2007, well after the Plaintiff's last injury";[4] (2) "Reeves Logging and its employees remain subject to the workers' compensation laws until Reeves filed its notice of withdrawal"; and (3) "[t]he plaintiff and all other employees were covered by workers' compensation until such time as Reeves Logging filed its notice of withdrawal."

After denying the Second Injury Fund's motion for summary judgment, the trial court conducted a bench trial on Mr. Seiber's workers' compensation claim. On April 16, 2008, the trial court filed its order denying the Second Injury Fund's motion for summary judgment and awarding Mr. Seiber $286,616 in workers' compensation benefits. The court apportioned 15% of the liability to Reeves Logging and 85% to the Second Injury Fund.

Both Reeves Logging and the Second Injury Fund appealed. However, while the appeal was pending, Mr. Reeves reached a settlement with Mr. Seiber and dismissed his appeal. On December 11, 2008, this Court filed an order in accordance with Tenn.Code Ann. § 50–6–225(e)(1) directing that this case be placed on the Court's docket to determine whether the Second Injury Fund may be required to pay workers' compensation benefits to an employee of an employer subject to the provisions of the Workers' Compensation Law who has not properly insured its employees at the time of the employee's injury.

## II.

This Court reviews the trial court's findings of fact in workers' compensation cases "de novo upon the record ..., accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise." Tenn.Code Ann. § 50–6–225(e)(2); see also Orrick v. Bestway Trucking, Inc., 184 S.W.3d 211, 216 (Tenn.2006); Phillips v. A & H Constr. Co., 134 S.W.3d 145, 149 (Tenn.2004). However, we review questions of law de novo with no presumption of correctness. Goodman v. HBD Indus., Inc., 208 S.W.3d 373, 376 (Tenn.2006); Layman v. Vanguard Contractors, Inc., 183 S.W.3d 310, 314 (Tenn.2006). On this appeal, the Second Injury Fund is not challenging the trial court's findings of fact but rather is taking issue with the trial court's interpretation and application of Tenn.Code Ann. § 50–6–208(a)(2). The interpretation of a statute and its application to undisputed facts involve questions of law. U.S. Bank, N.A. v. Tenn. Farmers Mut. Ins. Co., 277 S.W.3d 381, 386 (Tenn. 2009); Waldschmidt v. Reassure Am. Life Ins. Co., 271 S.W.3d 173, 175 (Tenn.2008). We have previously applied this standard of review to trial courts' interpretations of Tenn.Code Ann. § 50–6–208. Perry v. Sentry Ins. Co., 938 S.W.2d 404, 406 (Tenn.1996). Accordingly, we will review the trial court's interpretation and application of Tenn.Code Ann. § 50–6–208(a)(2) in this case de novo without a presumption of correctness.

---

4. Mr. Reeves actually filed the wrong withdrawal form on September 26, 2007. He filed the correct form on October 3, 2007.

## III.

When it was originally enacted in 1919, the Workers' Compensation Law did not include what we know today as the Second Injury Fund.[5] The General Assembly did not create the Second Injury Fund until 1945.[6] The purpose of the Second Injury Fund is to encourage employers to employ workers who have permanent physical disabilities. *See Brown v. John Martin Constr. Co.*, 642 S.W.2d 145, 147 (Tenn.1982); *Arnold v. Tyson Foods, Inc.*, 614 S.W.2d 43, 44 (Tenn.1981). These permanent physical disabilities may be from any cause or origin and need not have been compensable under the Workers' Compensation Law. Tenn.Code Ann. § 50–6–208(a)(1); *Watt v. Lumbermens Mut. Cas. Ins. Co.*, 62 S.W.3d 123, 129 (Tenn. 2001); *Allen v. City of Gatlinburg*, 36 S.W.3d 73, 76 (Tenn.2001).

The Second Injury Fund is now an essential part of the Workers' Compensation Law. *Travelers Ins. Co. v. Austin*, 521 S.W.2d 783, 786 (Tenn.1975). Since 1945, it has encouraged employers to hire workers with permanent physical disabilities by limiting the employers' workers' compensation liability exposure in two ways.[7] First, Tenn.Code Ann. § 50–6–208(a)(1) guarantees that employers will not be held liable for the effects of pre-existing permanent physical disabilities. *Hollingsworth v. S & W Pallet Co.*, 74 S.W.3d 347, 355 (Tenn.2002). Accordingly, with regard to employees who become permanently and totally disabled, employers are responsible only for the work-related disability that would have resulted from the subsequent injury had the earlier physical disability not existed. *Bomely v. Mid–America Corp.*, 970 S.W.2d 929, 934 (Tenn.1998). Second, for injuries arising on or before June 30, 2006,[8] Tenn.Code Ann. § 50–6–208(b)(1)(A) limits the employers' liability exposure for a subsequent injury causing permanent disability to the body as a whole to no more than the difference between 100% disability to the body as a whole and the percent of disability to the body as a whole attributable to the prior award. *See Scales v. City of Oak Ridge*, 53 S.W.3d 649, 655 (Tenn.2001); *Reagan v. Am. Policyholders' Ins. Co.*, 842 S.W.2d 249, 250 (Tenn.1992).

The Second Injury Fund was created to "ensure the economic well-being of ... employees"[9] who sustain subsequent, work-related physical injuries by providing funds to pay for the workers' benefits that their employers are not required to pay. It is funded by a tax on the workers'

5. Act of Apr. 12, 1919, ch. 123, 1919 Tenn. Pub. Acts 369.

6. Act of Feb. 28, 1945, ch. 149, 1945 Tenn. Pub. Acts 464.

7. During the 1985 legislative debates regarding amendments to the Workers' Compensation Law, Senator Riley Darnell, the Senate sponsor of the amendments, explained that the Second Injury Fund "encourages the employer to hire people who have been previously injured so that they are not going to be worried about having to pay for an employee who has a problem and if he gets hurt they'll end up paying for his old injury." *Burris v. Cross Mountain Coal Co.*, 798 S.W.2d 746, 749 (Tenn.1990) (quoting Senator Darnell).

8. Tenn.Code Ann. § 50–6–208(b)(1)(D) provides that the provisions of Tenn.Code Ann. § 50–6–208(b)(1) do not apply to injuries that arise on or after July 1, 2006. Because Mr. Seiber's current injury occurred on June 15, 2007, Tenn.Code Ann. § 50–6–208(b)(1) does not apply to this case.

9. Act of May 20, 2004, ch. 962, § 42(a), 2004 Tenn. Pub. Acts 2346, 2372 (noting that the anticipated savings generated by changes in the Workers' Compensation Law should "be passed to the entities that have paid faithfully workers' compensation premiums in order to ensure the economic well-being of their employees").

compensation insurance premiums paid by properly insured employers. Tenn.Code Ann. § § 50–6–208(c), –401(b) (2008). While Tenn.Code Ann. § 50–6–116 (2008) directs us to give the Workers' Compensation Law a remedial, equitable construction in favor of an injured employee, the interpretation of Tenn.Code Ann. § 50–6–208, which governs the allocation of liability between the employer and the Second Injury Fund, does not affect either the employee's eligibility for workers' compensation benefits or the amount of benefits to which the employee is entitled. In circumstances where the Second Injury Fund is not required to pay workers' compensation benefits, the employer is liable for the total amount of benefits to which the employee is entitled. Tenn.Code Ann. § 50–6–208(a)(4).

## IV.

■ This appeal does not involve Mr. Seiber's right to collect workers' compensation benefits for his June 15, 2007 injury or the amount of benefits to which he is entitled. It is undisputed that Reeves Logging's employees were covered by the Workers' Compensation Law on June 15, 2007, because Mr. Reeves, even though he could have qualified as an exempt employer, had failed to file an I–9 form with the Division of Workers' Compensation.[10] The issue before us is the extent to which Reeves Logging can lay off a portion of its workers' compensation liability on the Second Injury Fund.

■ Tenn.Code Ann. § 50–6–208(a) contains four necessary preconditions that must exist before the Second Injury Fund

can be held liable for workers' compensation benefits. They include:

(1) the injured employee must have previously sustained a permanent physical disability from any cause or origin, Tenn.Code Ann. § 50–6–208(a)(1);

(2) the injured employee must have become permanently and totally disabled through a subsequent work-related injury, Tenn.Code Ann. § 50–6–208(a)(1);

(3) the injured employee's employer must have had actual knowledge of the employee's preexisting permanent disability before the subsequent work-related injury, either when the employee was hired or when the employee was retained in employment after the employer acquired actual knowledge of the employee's preexisting permanent disability, Tenn. Code Ann. § 50–6–208(a)(2); and

(4) the injured employee must work for an employer who has "properly insured" its workers' compensation liability or has qualified to operate as a self-insurer, Tenn.Code Ann. § 50–6–208(a)(2).

The first three preconditions to the Second Injury Fund's liability in this case are satisfied. Mr. Seiber sustained an injury in 2005 that resulted in a permanent physical disability. Mr. Reeves was admittedly aware of Mr. Seiber's pre-existing permanent physical disability when he allowed Mr. Seiber to return to work in 2007. Finally, the trial court concluded that Mr. Seiber is now permanently and totally disabled as a result of the injuries he sus-

10. The trial court, consistent with this Court's holdings in *Whitehead v. Watkins*, 741 S.W.2d 327, 329 (Tenn.1987) and *Karstens v. Wheeler Millwork, Cabinet & Supply Co.*, 614 S.W.2d 37, 40 (Tenn.1981), held that the employees of Reeves Logging were covered by the Workers'

Compensation Law because Mr. Reeves had not taken any steps to withdraw from coverage prior to Mr. Seiber's injury on June 15, 2007. Neither Mr. Seiber nor the Second Injury Fund have taken issue with this conclusion on appeal.

tained on June 15, 2007. Accordingly, the pivotal question in this case is whether Reeves Logging satisfies the requirement in Tenn.Code Ann. § 50–6–208(a)(2) either that it has "properly insured ... [its] workers' compensation liability" or that it has qualified to act as a self-insurer.

Reeves Logging never claimed that it was qualified to be a self-insurer. However, Mr. Seiber insists that Mr. Reeves satisfied Tenn.Code Ann. § 50–6–208(a)(2) by having workers' compensation insurance coverage from June 27, 2002 to January 28, 2003—over four years before Mr. Seiber's injury. Thus, the narrow issue we must decide is whether an employer can be considered to be "properly insured" for the purpose of Tenn.Code Ann. § 50–6–208(a)(2) if it does not have workers' compensation liability insurance when the employee is injured but had insurance at some time in the past. The answer is plainly "no."

 When confronted with a question of statutory interpretation, the courts must give effect to the General Assembly's intent while maintaining the statute's intended scope. *Tidwell v. City of Memphis*, 193 S.W.3d 555, 559 (Tenn.2006); *State v. Collins*, 166 S.W.3d 721, 725–26 (Tenn.2005). The search for a statute's purpose necessarily begins with the statute's words. *Waldschmidt v. Reassure Am. Life Ins. Co.*, 271 S.W.3d at 176. While the courts must, on occasion, resort to ascertaining a statute's meaning using the rules of statutory construction and "other external sources of the Legislature's purpose," *Calaway ex rel. Calaway v. Schucker*, 193 S.W.3d 509, 516 (Tenn.

2005); *In re Conservatorship of Clayton*, 914 S.W.2d 84, 90 (Tenn.Ct.App.1995), statutes whose terms are plain and unambiguous require no construction and should be enforced according to their plain terms. *Colonial Pipeline Co. v. Morgan*, 263 S.W.3d 827, 836 (Tenn.2008); *Wells v. Tenn. Bd. of Regents*, 231 S.W.3d 912, 916 (Tenn.2007). Thus, despite the equitable and remedial construction rule in Tenn. Code Ann. § 50–6–116, the Workers' Compensation Law does not authorize the courts to amend, alter, or extend the workers' compensation statutes beyond their plain meaning. *Wait v. Travelers Indem. Co. of Ill.*, 240 S.W.3d 220, 224–25 (Tenn. 2007); *Wausau Ins. Co. v. Dorsett*, 172 S.W.3d 538, 542–43 (Tenn.2005).

 One of the goals of the Workers' Compensation Law is to shift the burden of work-related injuries from workers, their families, and society to employers. *Lynch v. City of Jellico*, 205 S.W.3d 384, 390 (Tenn.2006); *Kinnard v. Tenn. Chem. Co.*, 157 Tenn. 206, 209–10, 7 S.W.2d 807, 808 (1928). It accomplishes this goal by requiring each employer to whom the law applies either to "[i]nsure and keep insured" its workers' compensation liability, Tenn.Code Ann. § 50–6–405(a)(1) (2008), or to qualify as a self-insurer, Tenn.Code Ann. § 50–6–405(a)(2). Employers who fail to satisfy one of these requirements expose themselves to heightened liability to their employees [11] and to monetary penalties.[12]

 In light of Tenn.Code Ann. § 50–6–405(a)(1), the phrase "employer who has properly insured the employer's workers'

**11.** Employers who fail to comply with Tenn. Code Ann. § 50–6–405 are subject to suit by their employees either for workers' compensation benefits or for common-law damages. If an employee elects to pursue a common-law negligence claim against the employer,

the employer may not assert defenses based on the employee's negligence or the negligence of other employees. Tenn.Code Ann. § 50–6–406(b) (2008).

**12.** Tenn.Code Ann. § 50–6–412 (2008).

compensation liability" in Tenn.Code Ann. § 50–6–208(a)(2) can have only one meaning. The adverb "properly" connotes action taken in conformity with applicable legal requirements. *See In re St. John's Nursing Home, Inc.,* 154 B.R. 117, 125 (Bankr.D.Mass.1993); *Ingle v. Bd. of County Commr's of Latimer County,* 274 P.2d 1021, 1023 (Okla.1954); *Granado v. Sentry Ins.,* 228 Wis.2d 794, 599 N.W.2d 62, 66 (App.1999). Thus, an employer that is not self-insured has "properly insured" its workers' compensation liability only if it has complied with Tenn.Code Ann. § 50–6–405(a)(1) by "insuring and keeping insured" its workers' compensation liability. An employer who has permitted its workers' compensation liability insurance to lapse and who has no insurance when an employee is injured has not complied with Tenn.Code Ann. § 50–6–405(a)(1) and, therefore, is not "properly insured" for the purpose of Tenn.Code Ann. § 50–6–208(a)(2). Accordingly, an employee of such an employer is not entitled to recover benefits from the Second Injury Fund.

It is undisputed that Reeves Logging was subject to the Workers' Compensation Law when Mr. Seiber was injured on June 15, 2007, because Mr. Reeves had failed to file an I–9 Form to withdraw from the Workers' Compensation Law. Reeves Logging was, therefore, required under 50–6–405(a)(1) to have insurance for its workers' compensation liability. It is likewise undisputed that Mr. Reeves had allowed his workers' compensation liability insurance to lapse on January 28, 2003, and thus, Reeves Logging had no workers' compensation liability insurance when Mr. Seiber was injured. Therefore, Reeves Logging was not "properly insured" when Mr. Seiber was injured. Because Mr. Seiber was not employed by an "employer who [had] properly insured the employer's workers' compensation liability" when he was injured, he cannot establish that he meets all the preconditions necessary to be found eligible to receive workers' compensation benefits from the Second Injury Fund.

Despite the plain language of Tenn.Code Ann. §§ 50–6–208(a)(2), –405(a)(1), Mr. Seiber insists that the trial court construed Tenn.Code Ann. § 50–6–208(a)(2) in an appropriately equitable manner by concluding that an employer who had obtained workers' compensation liability insurance for a brief period four years before the occurrence of a compensable injury is "properly insured." Rather than being "equitable," that interpretation is entirely incompatible with the plain meaning of both Tenn.Code Ann. § 50–6–208(a)(2) and Tenn.Code Ann. § 50–6–405(a)(1). It is likewise inconsistent with the Workers' Compensation Law's purpose of shifting the burden of work-related injuries to employers. Permitting employees of employers who have not properly insured their workers' compensation liability to receive benefits from the Second Injury Fund would only encourage employers to forego obtaining workers' compensation liability insurance and to become "free riders," thereby shifting the burden of their employees' work-related injuries to the other insured employers who have paid the tax on their workers' compensation insurance premiums to finance the Second Injury Fund.

## V.

Based on the undisputed facts of this case, we have concluded that Mr. Seiber is not entitled to benefits from the Second Injury Fund because Reeves Logging was not properly insured for the purpose of Tenn.Code Ann. § 50–6–208(a)(2) when he was injured in 2007. Accordingly, the trial court's judgment against the Second Injury Fund is reversed, and Mr. Seiber's claim against the Second Injury Fund is dismissed. The costs of this appeal are

taxed against James R. Seiber for which execution, if necessary, may issue.