Lee R. WILKES, Plaintiff,

v.

The RESOURCE AUTHORITY OF SUM-
NER COUNTY, Tennessee and Royal
Insurance Company, Defendants.

Supreme Court of Tennessee,
at Nashville.

Sept. 23, 1996.

Rehearing Denied Nov. 12, 1996.

Randolph A. Veazey, Connie Jones, Glasgow & Veazey, Nashville, for Defendants.

Thomas Jay Martin, Jr., David Alan Simpson, Gallatin, for Plaintiff.

## OPINION

WHITE, Justice.

In this workers' compensation action, we granted the employee's motion for review

**460**

pursuant to Tennessee Code Annotated Section 50–6–225(e)(1995 Supp.) to decide whether the employer is responsible for medical expenses and temporary total disability benefits associated with reconstructive surgery to the employee's chin. Also at issue is the trial court's award of nine percent permanent partial disability and attorney's fees. For the reasons stated below, we affirm the judgment of the trial court.

## I.

The employee, Lee R. Wilkes, is twenty-eight years old and has a high-school equivalency degree. His work history consists primarily of physical labor and machine operation. At the time of the injury giving rise to this suit, he was working as an equipment operator at defendant employer's garbage disposal facility in Sumner County.

While performing his duties for the employer on October 24, 1990, Wilkes was struck in the face by a cable that had snapped. The accident resulted in a deep laceration running from his lower lip to the cleft of his chin. Wilkes was taken to a hospital where he received twelve stitches to the interior of his lip and twelve to the exterior. The injury caused the employee to miss a week of work.

Although the wound has closed completely, Wilkes' face bears a noticeable scar measuring one and one-half centimeters in length and one-half centimeter in width. The scar has made him overly conscious of his appearance. He does not express or assert himself like he did prior to the injury, tries not to call attention to himself in meetings or gatherings at work, and has difficulty looking at people during conversations at work and elsewhere. He attempts to hide the scar by wearing a beard.

The employee filed suit seeking benefits for temporary and permanent partial disability. He also sought medical expenses associated with the injury, namely those related to reconstructive surgery, to improve the appearance of the scar. According to the employee's reconstructive plastic surgeon, Dr.

Glenn Buckspan, the procedure sought by the employee would be performed as an outpatient procedure, and the employee would be out of work for three to four weeks recuperating. At oral argument, counsel estimated the costs of the procedure at approximately five to six thousand dollars.

At trial, the chancellor awarded the employee nine percent permanent partial disability to the face, which equates to four and one-half percent to the whole body, for a judgment of $3,461.58. The chancellor also determined that the employee suffered from a loss of confidence and self-esteem as a result of the scar, and that the reconstructive surgery was reasonably necessary. Thus, the court awarded medical expenses related to the proposed outpatient reconstructive surgery, plus temporary total disability benefits for a recuperation period following surgery. The court declined to award attorney's fees assessed against the medical expenses associated with the surgery.

The Special Workers' Compensation Appeals Panel reversed the trial court because the employee's "disfigurement has [not] so altered his appearance as to materially affect his employability." We granted the employee's motion for full court review, and now review the trial court's conclusions of fact *de novo*, accompanied by a presumption of correctness unless the preponderance of the evidence is otherwise. Tenn.Code Ann. § 50–6–225(e)(2)(1995 Supp.); *Spencer v. Towson Moving & Storage Inc.*, 922 S.W.2d 508, 509 (Tenn.1996).

## II.

The first and primary issue to be resolved concerns the liability of the employer for reconstructive surgery requested by the employee to improve the appearance of the scar. The employer contends that the employee is not entitled to the surgery because he has sustained no vocational or anatomical impairment. Also, relying upon the so-called "disfigurement statute," Tenn.Code Ann. § 50–6–207(3)(E) (1995 Supp.),[1] the em-

1. "For *serious disfigurement* to the head, face or hands, not resulting from the loss of a member or other injury specifically compensated, so alter-

ing the personal appearance of the injured employee as to *materially affect such injured employee's employability* in the employment in which

ployer asserts that the employee's scar does not materially affect employability in the line of work for which the employee is qualified. In response, the employee maintains that his scar is a serious disfigurement materially affecting his employment, thereby triggering the provisions of Tennessee Code Annotated Section 50–6–207(3)(E)(1995 Supp.).

An employer must furnish medical treatment to an injured employee "as ordered by the attending physician ... made reasonably necessary by accident ... as may be reasonably required...." Tenn.Code Ann. § 50–6–204(a)(1)(1991 Repl.).[2] Significantly, this rule applies even when the nature of the injury "is such that it does not disable the employee but reasonably requires medical ... treatment or care...." Tenn.Code Ann. § 50–6–204(b)(1991 Repl.).[3]

In *Carver v. Sparta Electric System,* 690 S.W.2d 218 (Tenn.1985), the employee sustained burns to his head and hands in the course and scope of his employment. The injury to his head was such that it left a scarred and balded area approximately two by four inches in size. As in the present case, the employee in *Carver* wanted to have reconstructive surgery to improve his appearance. The employer in *Carver,* like the employer here, argued that the reconstructive surgery was not reasonably required within the meaning of Tennessee Code Annotated Section 50–6–204(b). The trial court disagreed, finding that the surgery was necessary to improve the employee's appearance. *Carver v. Sparta Electric System,* 690 S.W.2d at 221. We affirmed, noting "[t]here is nothing in the record to indicate that [the

employee's] further [reconstructive] treatment is not reasonably necessary." *Id.*

 Under the unambiguous medical treatment provision of Tennessee Code Annotated Section 50–6–204(b), an employee's injury need not affect the employee's employability or otherwise result in vocational impairment. Rather, the medical treatment sought must be "reasonably necessary." *Id.*; *Clayton v. Pizza Hut, Inc.,* 673 S.W.2d 144, 145–46 (Tenn.1984)(observing that an employee is entitled to necessary medical expenses for treatment of injuries resulting in permanent disfigurement which was not disabling and did not affect employability). Simply stated, the fact that an employee has sustained no vocational impairment as a result of the disfigurement is irrelevant for purposes of obtaining treatment under Tennessee Code Annotated Section 50–6–204(b). *Carver v. Sparta Electric System,* 690 S.W.2d at 221. Thus, we hold that when reconstructive surgery or other treatment will be reasonably effective in improving a permanent disfigurement resulting from a work-related injury, such surgery or other treatment is "reasonably required" under Tennessee Code Annotated Section 50–6–204(b). This is true even in the absence of vocational impairment that would otherwise entitle the employer to permanent partial or permanent total disability benefits.

In the present case, medical testimony establishes that the proposed reconstructive procedure will improve the employee's appearance, thereby bringing him closer to the appearance he enjoyed prior to his injury on the job. The employee testified that he

such injured employee was injured or other employment for which such injured employee is then qualified, sixty-six and two-thirds percent (66⅔%) of the average weekly wages for such period as the court may determine, not exceeding two hundred (200) weeks. The benefit herein provided shall not be awarded in any case where the injured employee is compensated under any other provision of the Workers' Compensation Law ...." Tenn.Code Ann. § 50–6–207(3)(E)(1995 Supp.)(emphasis added).

**2.** "The employer or the employer's agent shall furnish free of charge to the employee such medical and surgical treatment, medicine, medical and surgical supplies, crutches, artificial members, and other apparatus, including prescription

eyeglasses and eye wear, such nursing services as ordered by the attending physician and hospitalization, including such dental work made reasonably necessary by accident as herein defined, as may be reasonably required...." Tenn.Code Ann. § 50–6–204(a)(1)(1991 Repl.).

**3.** "Where the nature of the injury or occupational disease ... is such that it does not disable the employee but reasonably requires medical, surgical, or dental treatment or care, medicine, surgery and dental treatment, medicine, medical and surgical supplies, crutches, artificial members, and other apparatus shall be furnished by the employer." Tenn.Code Ann. § 50–6–204(b)(1995 Supp.).

wants to have the surgery to improve the appearance of the scar. The scar makes him self-conscious, and he does not tend to be as open with people as he was before. He now wears a beard to conceal the scar. A photograph contained in the record shows that the scar is prominently located and immediately noticeable. We agree with the trial court's finding that the reconstructive surgery is reasonably necessary within the meaning of Tennessee Code Annotated Section 50–6–204(b), even accepting for purposes of argument the employer's claim that the employee has sustained no vocational impairment.

### III.

■ Having determined that the employee is entitled to medical expenses associated with the proposed reconstructive surgery under Tennessee Code Annotated Section 50–6–204(b), we turn to the issue of temporary total disability benefits. The employer claims that the trial court erred in finding that the employee was entitled to such benefits while recuperating from the surgery. We disagree.

■ Temporary total disability refers to that period of time in which the employee is unable to work because of the injury and is "recuperating as far as the nature of [the] injury permits." *Gluck Brothers, Inc. v. Coffey,* 222 Tenn. 6, 431 S.W.2d 756, 759 (1968); *Simpson v. Satterfield,* 564 S.W.2d 953, 955 (Tenn.1978). "[T]o make out a prima facie case of entitlement to temporary total disability, an employee must prove that [the employee] was (1) totally disabled to work by a compensable injury; (2) that there was a causal connection between the injury and [the] inability to work; and (3) the duration of that period of disability. Temporary total disability benefits are terminated either by the ability to return to work or attainment of maximum recovery." *Simpson v. Satterfield,* 564 S.W.2d at 955.

Here, the medical testimony is undisputed that the employee will require three to four weeks away from work immediately following the reconstructive surgery. As such is necessary to ensure maximum benefit from the procedure, we agree with the trial court's award of temporary total disability benefits during the period of recuperation. Holding to the contrary would not only deprive the employee of benefits provided by the workers' compensation scheme, but would also jeopardize the healing process. Dr. Buckspan testified that because of the employee's "occupation with multiple environmental exposures, it would be [his] recommendation that [the employee] not return to work until after a period of approximately two to four weeks so that there would be no problems with healing."

### IV.

Also disputed is the trial court's finding of nine percent permanent partial disability to the face (or four and one-half percent to the whole body). The court's award was based upon the disfigurement statute. Tenn.Code Ann. § 50–6–207(3)(E) (1995 Supp.). As stated above, the employer contends there is no evidence to support the court's finding that the injury sustained by the employee so altered his appearance as to materially affect his employment. The employer thus claims that it was error to award permanent partial disability benefits.

■ Permanent partial disability benefits may be awarded when a worker sustains a "serious disfigurement" to the head, face or hands that alters the employee's appearance to the extent that it "materially affect[s] such injured employee's employability." Tenn.Code Ann. § 50–6–207(3)(E)(1995 Supp.). When benefits are sought under the disfigurement statute, the burden is on the employee to prove that (1) a serious disfigurement has been sustained, (2) the disfigurement materially affects the employment, (3) the condition is permanent, and (4) a work-related injury caused the disfigurement.[4]

---

**4.** The causation element requires the employee to prove that the injury for which benefits are sought arose out of and occurred in the course of the employment. *Brimhall v. Home Ins. Co.,* 694 S.W.2d 931, 932 (Tenn.1985). An injury arises out of the employment when there is, apparent to the rational mind considering all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury. *Fink v. Cau-*

■ Here, there is no dispute that the employee's scar resulted from being struck in the face with a cable in the course and scope of his employment. Thus, the causation element has been satisfied. Also, medical testimony establishes that the scar is permanent, although its appearance will improve after surgery. Moreover, we have no difficulty concluding that the scar qualifies as a "serious disfigurement." It is an obvious deformity, immediately noticeable, and prominently located on the face. According to the only medical expert to testify, Dr. Buckspan, the "entire area is rough and irregular," and facial hair will not grow in the scar. Dr. Buckspan described the scar as a "very obvious deformity and not one that you have to look at very hard to see." A photograph of the scar contained in the record supports Dr. Buckspan's opinion.

■ We also conclude that the scar has materially affected the employee vocationally. It is true, as pointed out by the employer, that the employee retains no anatomical impairment or physical disfunction from the scar. Physically, the employee can meet the demands of his job. However, anatomical disability and vocational impairment are separate issues. An award of vocational impairment does not depend strictly upon anatomical disability. *See Corcoran v. Foster Auto GMC, Inc.*, 746 S.W.2d 452, 457 (Tenn.1988). Thus, "employability" as used in the disfigurement statute relates to the physical and mental ability to obtain and maintain employment, as well as the physical and mental abilities that the job demands. Defining "employability" merely in physical terms is too restrictive because it ignores the term's mental, emotional and communicative aspects important in obtaining and maintaining employment. *See generally Jose v. Equifax, Inc.*, 556 S.W.2d 82 (Tenn.1977)(workers' compensation benefits are not limited to anatomical disorders, but extend to mental injuries).

In this case, the evidence is uncontradicted that the presence of the scar has caused the employee to become self-conscious to the point that he has attempted to conceal the scar with a beard. It is also uncontradicted that his interaction with coworkers and participation in work activities has suffered. When asked to provide a specific example of how the disfigurement has affected his employment, the employee testified:

> I'm on an employee involvement team at work where we try to make the factory as efficient as possible to save the company money. And all but one of my contributions to that team has been made in writing instead of actually in meetings because in the meetings I sit at the back of the room and pretty much keep my mouth shut and just listen to what everybody else says because I don't really feel like calling attention to myself.[5]

In light of our *de novo* review of the record, we cannot conclude that the evidence preponderates against the trial court's award of permanent partial disability made pursuant to the disfigurement statute.

## V.

■ Finally, an issue has been raised concerning the propriety of awarding attorney's fees against medical expenses associated with the reconstructive surgery. Citing a lack of authority, the trial court refused to award attorney's fees assessed against these medical expenses.

Tennessee Code Annotated Section 50–6–226(a) subjects attorney's fees in workers' compensation cases to the approval of the court, and limits such fees to twenty percent of "the amount of the recovery or award." Tenn.Code Ann. § 50–6–226(a)(1991 Repl.). This Court has construed "recovery or award" to include medical expenses contested at trial. *Langford v. Liberty Mut. Ins. Co.*, 854 S.W.2d 100, 102 (Tenn.1993). Here, the expenses associated with the surgery were contested at trial, and were awarded to the employee. Thus, the employee's attorney is entitled to an award of attorney fees from

---

*dle,* 856 S.W.2d 952, 958 (Tenn.1993). An injury occurs in the course of employment if it occurs while the employee is performing a duty the employee was employed to do. *Id.*

5. As part of this "involvement team" the employee interacts with management personnel as well as co-workers.

the expenses related to the surgery. *Id.* (noting that the trial court has discretion to award less than twenty percent if appropriate).

We realize that the practical impact of this holding is that the employee will not receive one hundred percent of the cost of the surgery. Although this result is not attractive, we are not at liberty to rewrite Tennessee Code Annotated Section 50–6–226(a) to provide for attorney's fees in addition to the "amount of the recovery or award." Such a change would require legislative action.

For the foregoing reasons, the judgment of the trial court is affirmed. Costs shall be paid by the employer.

BIRCH, C.J., not participating

DROWOTA, ANDERSON and REID, JJ., concur.