FILED

August 9, 2016

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time 8:17 AM



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
# AT NASHVILLE

| | | |
|---|---|---|
| SUSAN COOLIDGE, | ) | Docket No. 2015-06-1333 |
|      Employee, | ) | |
| v. | ) | State File No. 18723-2015 |
| | ) | |
| CITY WINERY NASHVILLE, LLC, | ) | Judge Joshua Davis Baker |
|      Employer, | ) | |
| | ) | |
| And | ) | |
| | ) | |
| CHARTER OAK FIRE INSURANCE, | ) | |
|      Carrier. | ) | |

## EXPEDITED HEARING ORDER FOR MEDICAL BENEFITS

This claim came before the Court on July 13, 2016, on the Request for Expedited Hearing filed by the employee, Susan Coolidge, pursuant to Tennessee Code Annotated section 50-6-239 (2015). The central legal issue is whether the surgical treatment Ms. Coolidge seeks—a corrective rhinoplasty—would be reasonably effective to correct the condition of her nose. The Court finds Ms. Coolidge will likely succeed at a hearing on the merits in proving the surgical treatment is reasonable and necessary and, therefore, holds the employer, City Winery Nashville, LLC, must provide Ms. Coolidge a panel of surgeons specializing in rhinoplasty from which she may select one to evaluate the condition of her nose and provide surgery if the physician determines surgery would be reasonably effective to correct the nasal deformity that resulted from the workplace accident .[1]

## History of Claim

This claim requires the Court to consider whether a workplace injury to an employee's cosmetically reconstructed nose requires her employer to provide additional medical care to return the employee's nose to its preinjury condition. On March 4, 2015, Ms. Coolidge was working as a server at City Winery when a serving tray fell and hit her

---

[1] A complete listing of the technical record and exhibits admitted at the Expedited Hearing is attached to this Order as an appendix.

nose. (Ex. 2.) According to her affidavit, she claimed the accident damaged her nose and altered its appearance by causing a "bump with a shadow" as well as an oval-shaped mark to appear. She also stated the accident caused the cartilage in her nose to collapse.

City Winery accepted the claim as compensable and there is no dispute of compensability. City Winery provided Ms. Coolidge two panels of physicians. (Exs. 3, 4.) She consulted with physicians on each panel and the second-panel physician referred her to another physician for evaluation. (Ex. 1.) Additionally, City Winery provided Ms. Coolidge a second opinion on the issue of plastic surgery. Ultimately, Ms. Coolidge saw a total of four physicians.

All physicians made somewhat similar statements about Ms. Coolidge's condition. Dr. Lorina Poe noted that Ms. Coolidge has a history of previous nose surgeries and "the physical deformity is at the site of previous surgery." Dr. Poe recommended referral to a plastic surgeon and deferred to that surgeon's opinion on the "necessity of further treatment." (Ex. 1 at 12.)

Dr. Bruce Shack, a plastic surgeon Ms. Coolidge selected from a panel, wrote the following in his treatment notes:

> Examination shows a normal-looking nose with a little bit of dorsal irregularity shortly nothing major . . . I've told her that I don't know that anything really needs to be done [but] she's very concerned about this little subtle change in the appearance of her nose that resulted from the injury and since this is a Workers' Compensation issue wishes to have everything done possible.

*Id*. at 19. At a subsequent appointment he noted "there is a little bit of very subtle asymmetry to the soft tissue with the right side being a little bit for [sic] than the left and there is a little bit of erythematous discoloration over this area which tends to [be] accentuated. However this remains a very subtle finding and I don't think any surgical intervention would be necessary." *Id*. at 22. The medical notes do not indicate why Dr. Shack believed surgical intervention would be unnecessary.

Although he did not think surgery should be undertaken, Dr. Shack referred Ms. Coolidge to Dr. William Ries, a professor in plastic and facial reconstruction surgery at Vanderbilt University. Dr. Ries noted Ms. Coolidge's medical history included "at least five nasal procedures." He diagnosed "acquired external nasal deformity" and recommended she have no treatment for the condition. *Id*. at 23. Like Dr. Shack, Dr. Ries also provided no indication why he believed further treatment was not warranted despite Ms. Coolidge's nasal deformity. He referred Ms. Coolidge to Dr. Mark Clymer of Clymer Facial Plastic Surgery.

Dr. Clymer examined Ms. Coolidge and noted the presence of a nasal deformity in his treatment notes. *Id*. at 32. He gave no direct opinion on the necessity of rhinoplasty but provided Ms. Coolidge an estimate of $7,329.00 to perform the procedure. *Id*. at 36. His notes also appear to indicate a method for correcting the deformity. *Id*. at 29-33. Ms. Coolidge testified Dr. Clymer informed her he could perform the surgery.

After Ms. Coolidge visited Dr. Clymer, the claims adjuster for City Winery's workers' compensation carrier, Bailee Greer, contacted the doctor's office and learned he does not accept workers' compensation insurance. According to Ms. Greer's affidavit, the carrier arranged an appointment for Ms. Coolidge with Dr. Kevin Kelly, but she declined to attend. Ms. Coolidge agreed she did not see Dr. Kelly and stated he was a "cranio-oral surgeon."

After City Winery declined to provide Ms. Coolidge treatment from Dr. Clymer, she filed a Petition for Benefit Determination seeking medical benefits. (T.R. 1.) When the parties were unable to resolve their dispute through mediation, the workers' compensation mediator issued a Dispute Certification Notice. (T.R. 2.) Thereafter, Ms. Coolidge filed a Request for Expedited Hearing seeking medical benefits.

At the expedited hearing, Ms. Coolidge testified she had several rhinoplasties in the past and the damage to her nose is something she wished to have repaired. She stated that following the accident sunglasses no longer fit correctly. She further testified she had little faith in the doctors to which she was referred through workers' compensation.

Ms. Coolidge asked the Court to award her money to have her nose repaired so she could seek a doctor outside of workers' compensation willing to perform the corrective rhinoplasty.

City Winery argued the Court should not order the surgery because none of the physicians who evaluated Ms. Coolidge recommended surgical intervention. City Winery maintains it provided Ms. Coolidge all the medical care required by law.

### Findings of Fact and Conclusions of Law

City Winery moved to dismiss the claim at the close of Ms. Coolidge's proof, arguing that Ms. Coolidge presented no evidence that she needs surgery or, if so, that her need for surgery arose from the employment. The Court took the motion under advisement. The motion is denied.

The parties agree that this claim is compensable, so the only issue before the Court is whether Ms. Coolidge is entitled to additional medical care: in this case, a rhinoplasty. In order to achieve the relief she seeks, Ms. Coolidge has to show she is likely to prevail at a hearing on the merits on the issue of additional medical benefits. *See McCord v.*

3

*Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7- 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). It is undisputed that Ms. Coolidge's injury is not disabling. Despite the lack of disability, she may still be entitled to medical benefits. *See* Tenn. Code Ann. § 50-6-204(b)(1) (2015) ("Where the nature of the injury . . . is such that it does not disable, but reasonably requires . . . surgical care . . . surgery . . . shall be furnished by the employer.").

The Court has identified only one case that directly addressed the issue presented here—*Wilkes v. The Resource Authority of Sumner County*, 932 S.W.2d 458 (Tenn. 1996). In *Wilkes*, the Supreme Court considered whether the employer should be required to pay the cost of plastic surgery necessary to correct a scar an injured employee incurred on his face in a workplace accident. The scar, located on the employee's chin, measured one-half centimeter squared. The proof showed the employee attempted to hide the scar by wearing a beard and the presence of the scar inhibited the employee's assertiveness at workplace meetings or gatherings, and made it difficult for the employee to look at others while conversing. *Id*. at 460. Otherwise, the scar caused no vocational disability.

The trial court in *Wilkes* found the scar resulted in the employee suffering from "a loss of confidence and self-esteem" and ordered the employer to pay for the reconstructive surgery. The Special Workers' Compensation Panel reversed the decision finding employee's injury did not qualify as a "disfigurement" as the term was then defined by the Workers' Compensation Law. *Id*. In affirming the trial court's decision and ordering the employer to provide the treatment, the Supreme Court held the following:

> [W]hen reconstructive surgery or other treatment will be reasonably effective in improving a permanent disfigurement resulting from a work-related injury, such surgery or other treatment is "reasonably required" under Tennessee Code Annotated Section 50-6-204(b). This is true even in the absence of vocational impairment that would otherwise entitle the employer to permanent partial or permanent total disability benefits.

*Id*. at 462. The Court finds the *Wilkes* case dispositive and, relying on this decision, holds City Winery must provide Ms. Coolidge access to additional medical treatment.

Ms. Coolidge testified, prior to this workplace accident, she underwent numerous plastic surgeries to correct a congenital condition to her nose. Following the accident, as admitted by every physician who examined her, Ms. Coolidge's nose is deformed. The Court also reviewed the before and after photos and recognized a difference in the appearance of her nose post-accident. Further, Ms. Coolidge testified she recognized the damage to her nose and wished to have it repaired.

4

Although none of the panel physicians who examined Ms. Coolidge recommended additional medical treatment, the medical records contain no explanation of why further treatment is unnecessary. In short, the Court questions why treatment is not recommended despite the presence of the nasal deformity: do the physicians think the procedure would be unsuccessful, or do they feel the damage is not serious enough to justify corrective surgery? The Court's questions on this issue are further amplified by Dr. Clymer's notes, which indicate corrective surgery could be performed.

The Court finds Ms. Coolidge presented sufficient evidence to prove a likelihood of success at a hearing on the merits on the issue of entitlement to additional medical treatment for her nose. The proof shows she suffered a nasal deformity as a result of the workplace accident and, according to *Wilkes*, has the right to the surgery if it would be "reasonably effective in improving her permanent disfigurement." The Court, therefore, holds City Winery must provide Ms. Coolidge with a panel of physicians specializing in rhinoplasty from which she shall select one to evaluate the effectiveness of reconstructive surgery in correcting the nasal deformity she acquired in the workplace accident. If City Winery cannot find a sufficient number of surgeons willing to provide treatment through workers' compensation, it shall request a waiver of the fee schedule citing the unavailability of care as the cause. *See* Tenn. Code Ann. § 50-6-204(a)(3)(A)(iv) (2015).

**IT IS, THEREFORE, ORDERED** as follows:

1. City Winery or its workers' compensation carrier shall provide Ms. Coolidge with medical treatment for these injuries as required by Tennessee Code Annotated section 50-6-204 (2015), to be initiated by City Winery or its workers' compensation carrier providing Ms. Coolidge with a panel of surgeons specializing in rhinoplasty for evaluation of the effectiveness of corrective surgery. If City Winery or its workers' compensation carrier cannot identify a sufficient number of physicians to fill a panel, it shall request a waiver of the fee schedule from the Bureau. City Winery or its workers' compensation carrier shall pay the costs of the evaluation. Ms. Coolidge or the medical providers shall furnish the medical bills for the evaluation to City Winery or its workers' compensation carrier.

2. In the event the physician chosen from the panel indicates corrective surgery would be an effective means for correcting her nasal deformity, City Winery or its workers' compensation carrier shall pay the cost of this procedure. Medical bills shall be furnished to City Winery or its workers' compensation carrier by Ms. Coolidge or the medical providers.

3. This matter is set for an Initial (Scheduling) Hearing on September 12, 2016, at 10:30 a.m. (CDT).

4. Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3) (2015). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance.

5. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email WCCompliance.Program@tn.gov or by calling (615) 253-1471.

**ENTERED ON THIS THE 9TH DAY OF AUGUST, 2016.**

_____

**Judge Joshua Davis Baker**
**Court of Workers' Compensation Claims**

Initial Hearing:

An Initial (Scheduling) Hearing has been set for **September 12, 2016, at 10:30 a.m. (CDT) with Judge Joshua Davis Baker, Court of Workers' Compensation Claims. You must call 615-741-2113 or toll free at 855-874-0474 to participate in the Initial Hearing.**

**Please Note: <u>You must call in on the scheduled date/time to participate. Failure to call in may result in a determination of the issues without your further participation. All conferences are set using Central Time (CT).</u>**

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk within seven business days of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a filing fee in the amount of $75.000. Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. **<u>Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.</u>**

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of

the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal.  The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the clerk of the Appeals Board.

6.  If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within five business days of the expiration of the time to file a transcript or statement of the evidence, specifying the issues presented for review and including any argument in support thereof.  A party opposing the appeal shall file a response, if any, with the Court Clerk within five business days of the filing of the appellant's position statement.  All position statements pertaining to an appeal of an interlocutory order should include:  (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

**APPENDIX**

Exhibits:

1. Medical Records
2. Affidavit of Susan Coolidge
3. Physician panel with selection of Vanderbilt
4. Physician panel of plastic surgeons, selected Dr. Shack
5. Photographs
6. Affidavit of Bailee Greer
7. Email to Danny Brandon concerning additional DCN issues

Technical record:[2]

1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Expedited Hearing

---

[2] The Court did not consider attachments to Technical Record filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in these filings or any attachments to them as allegations unless established by the evidence.

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was sent to the following recipients by the following methods of service on this the 9th day of August, 2016.

| Name | Certified Mail | First Class Mail | Via Fax | Fax Number | Via Email | Email Address |
|------|----------------|------------------|---------|------------|-----------|---------------|
| Susan Coolidge | X | | | | X | 1444 Campbell Rd. Goodlettsville, TN 37072 suscoo@gmail.com |
| Chip Storey | | | | | X | cstoreyj@travelers.com |

_____

Penny Shrum, Court Clerk
Court of Workers' Compensation Claims
Wc.courtclerk@tn.gov

10