FILED

September 23, 2016

TENNESSEE
WORKERS' COMPENSATION
APPEALS BOARD

Time: 12:21 P.M.



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

| | |
|---|---|
| Susan Coolidge | ) Docket No. 2015-06-1333 |
| | ) |
| v. | ) State File No. 18273-2015 |
| | ) |
| City Winery Nashville, LLC, et al. | ) |
| | ) |
| | ) |
| Appeal from the Court of Workers' | ) |
| Compensation Claims | ) |
| Joshua D. Baker, Judge | ) |

---

### Reversed and Remanded–Filed September 23, 2016

---

In this interlocutory appeal, the employer seeks a reversal of the trial court's order for medical benefits for the employee's alleged nose disfigurement. The employee, having a history of nose surgeries, alleged she suffered disfigurement to her nose when she was struck in the face by a falling tray. The employee's claim was accepted as compensable, but the employee's request for plastic surgery to repair her nasal deformity was denied. Following an expedited hearing, the trial court ordered the employer to provide a panel of surgeons specializing in rhinoplasties for evaluation of the effectiveness of corrective surgery and to pay for the surgery should the panel physician indicate surgery would be effective in correcting the employee's nasal deformity. The employer has appealed. Having carefully reviewed the record, we reverse the trial court's decision and remand the case for further proceedings as may be necessary.

Judge David F. Hensley delivered the opinion of the Appeals Board in which Judge Marshall L. Davidson, III, and Judge Timothy W. Conner joined.

E. Chip Storey, Jr., Franklin, Tennessee, for the employer-appellant, City Winery Nashville, LLC

Susan Coolidge, Goodlettsville, Tennessee, employee-appellee, pro se

1

## Factual and Procedural Background

Susan Coolidge ("Employee") is a resident of Davidson County, Tennessee, who suffered an injury when she was struck on her nose by a falling tray while in the course and scope of her work duties at City Winery Nashville, LLC ("Employer") on March 4, 2015. Employer does not dispute that the incident occurred, and it has accepted the claim as compensable and provided medical care to Employee. Employee was initially seen at CareSpot on March 9, 2015 by a physician's assistant who diagnosed her with a contusion to her nose. The physician's assistant documented that Employee requested a referral to a plastic surgeon and stated "[t]his provider believes the contusion is self limited [sic] and will resolve completely spontaneously – I cannot make a professional recommendation for plastic surgery intervention." Employee has a history of surgeries to her nose to correct what she described to her physicians as a congenital deformity, but which she testified was a broken nose with a "bump" on it. Consequently, she felt that only a plastic surgeon would be able to properly assess her work-related injury and determine whether she needed surgery. The record of Employee's visit to CareSpot reflects she "became very upset that [the physician's assistant] did not agree that her subjective visual changes, dizziness, sore throat, [and] hoarse voice were related to [her work] injury," and that she "demanded that [the physician's assistant] document a 'bump/swelling' on her nose," even though the physician's assistant "[could] not appreciate a deformity." The record also states that Employee "attempted to alter original documentation by taking it off the counter and writing on it."

Following Employee's visit to CareSpot, Employer provided a panel of medical providers from which Employee chose Vanderbilt Health Medical Clinic. She was seen there by Dr. Lorina Poe on March 26, 2015. Dr. Poe noted a history of Employee's having been "hit in the face by a bus tray . . . still with swelling in the area." The record of the visit noted a history of five nasal surgeries "to fix [a] congenital defect, [and a] secondary defect made by the surgeon [was] subsequently repaired . . . to obtain symmetry." The report noted that Employee "had pictures to compare[] before and after [the] injury in which the injury is apparent." Dr. Poe advised Employee she "needs to see [a] plastic [surgeon] for consultation." Employer subsequently wrote to Dr. Poe requesting her opinion "as to whether [Employee's] contusion and the need for a consult [with a] plastic surgeon arise[] primarily out of the acute injury." Dr. Poe responded affirmatively, stating Employee "has [a history] of nasal surgery [and] the physical deformity is at the site of previous surgery." Her response to a question about the treatment plan stated that a referral to a plastic surgeon "will determine necessity for further treatment."

Employer offered Employee a second panel, this time of plastic surgeons, from which Employee chose Dr. Bruce Shack. She first saw Dr. Shack on May 4, 2015, reporting to him that she had undergone prior nose surgeries for a "congenital deformity of the nose" and correction/refining of the initial surgery. Dr. Shack's record notes

2

Employee "says that after the second surgery 3 additional operations were done for smoothing and tweaking the result with which she was ultimately happy." It also notes that "[h]er last operation was done about 10 years ago." Dr. Shack observed that, on examination, Employee had a "relatively normal-looking nose with a little bit of dorsal irregularity shortly [sic] nothing major." He noted that "[t]he septum is midline and her airway is wide open." Dr. Shack told Employee that he did not "know that anything really needs to be done," observing "she's very concerned about this little subtle change in the appearance of her nose that resulted from the injury and since this is a Worker[s'] Compensation issue wishes to have everything done possible." He ordered "a CT scan to evaluate the current status of her nasal anatomy" and asked Employee to provide him with the records related to her prior surgeries.

Employee followed up with Dr. Shack on July 1, 2015 after undergoing the CT scan, which Dr. Shack observed showed "no evidence of any underlying cartilaginous or bony injury," and stating:

> Nonetheless, she continues to complain of deformity on the right side of her nose and shows me several photographs today which she thinks demonstrate[] this deformity. There is a little bit of very subtle asymmetry to the soft tissue with the right side being a little bit for [sic] than the left and there is a little bit of erythematous discoloration over this area which tends to [be] accentuated. However, this remains a very subtle finding and I don't think any surgical intervention would be indicated. However, because of her insistence I am going to refer her to Dr. Russell Ries in otolaryngology for another opinion. We'll see her back in plastic surgery clinic in the future only as needed.

Employee saw Dr. Ries on July 16, 2015 "for evaluation of [a] nasal deformity." His examination, diagnosis, and recommendation included the following:

> Nasal examination shows the external osseus cartilaginous nasal pyramid to be midline. There is a very slight asymmetry of the nasal bones, the right being somewhat more prominent than the left. She does have some narrowing of the middle vault of the nose. I did not appreciate any collapse of the nasal valves on inspiration. Intranasally, the septum is in good position. . . . I did not appreciate any palpable bony stepoffs or significant deformities of the nasal bones.
>
> My working diagnosis is acquired external nasal deformity.
>
> I have recommended to [Employee] that no treatment be undertaken for her nose. She will return to see me on a p.r.n. basis.

3

Employee continued to be dissatisfied with the medical care she had been provided, testifying at the expedited hearing that, because the physicians were provided by Employer and its insurance carrier and because of the presence of a nurse case manager, she had no faith in the treatment recommendations of these physicians. Consequently, on August 4, 2015, Employee saw Dr. Mark A. Clymer, a board certified plastic surgeon that she selected. A medical questionnaire completed by Employee at the visit asked "[w]ho can we thank for referring you," and Employee wrote "your website [and] photos (before [and] after)." The records of Dr. Clymer include three separate quotes for surgeries, each of which included rhinoplasty, with two of the quotes including additional procedures. An August 4, 2015 scheduling note in Dr. Clymer's records states, in part, "[Employee] given several quotes. Unsure about [c]hin [i]mplant at this time. This will be revision from an accident at work. She may go thru [sic] worker[s'] comp for this."

Employer received a note dated August 21, 2015 from Dr. Ries' office, which stated Dr. Ries "is referring his patient to Dr. Mark Clymer." Employer sent a letter dated September 8, 2015 to Dr. Ries stating that Employer "recently received your referral to Dr. Mark Clymer for a second opinion." The letter requested additional information "as to the reason for the referral and how it relates to [Employee's] work injury of 03/04/15." The letter requested Dr. Ries' opinion "as to whether the referral to Dr. Clymer for the current diagnosis of external nasal deformity arises primarily out of and in the course and scope of employment." Dr. Ries responded affirmatively, identifying the work-related diagnosis to be "[l]ate effect of nasal injury," and noting the treatment for the work-related injury to be "[p]ossible surgery."

Employer declined to approve an evaluation by Dr. Clymer. In an affidavit of the adjuster assigned to Employee's claim, the adjuster stated that Dr. Ries was "authorized to provide medical treatment to [Employee] as it pertains to her alleged injury," and that the doctor "requested that [Employee] receive a third medical opinion with Dr. Mark Clymer." Further, the affidavit reflects that the adjuster "contacted Dr. Clymer's office and learned that they do not accept workers' compensation insurance." The affidavit additionally noted that a nurse case manager had been hired to "coordinate an appointment with a provider who would agree to see [Employee] for a third medical opinion and who accepts workers' compensation insurance." It also stated that an appointment had been scheduled with Dr. Kevin Kelly, that Employee had been notified of the appointment, and that Employee "subsequently refused to attend the appointment."

Employee testified she "didn't refuse to go" to the appointment with Dr. Kelly, but acknowledged that she did not attend the appointment. She testified that when she received a call from the nurse case manager she "asked her who [she] could talk to about other options because [she] didn't want to waste anyone else's time and money, because this would be the third doctor, specialist, that they would have sent [her] to, and this one happened to be a cranio-oral surgeon."

4

Employee introduced 28 pages of photographs at the expedited hearing. However, there was no testimony at the expedited hearing and no markings on the exhibits to identify which photographs were taken before the work injury, which were taken after the injury, or the date on which any of the photographs were taken. In her closing argument, Employee stated that "the proof is in the photos that are dated from the evening of the incident and several months, and the proof is the physical damage I have to my nose right now standing here in front of you." She described in her argument "a white area surrounded by a dark shadow . . . it's an oval angle," but none of the exhibited photographs were marked to depict the alleged physical damage.

Dr. Clymer's records included email correspondence from Employee to his office staff dated January 4, 2016, stating that in the records Employee received "it does not state that there is a problem to be repaired in my nose." The email also stated,

> I need something in writing from a doctor which states there is damage to be repaired . . . and ultimately that my nose has been changed/damaged due to this incident. I can show them before and after photos. But the medical records that I have from Dr. Clymer and the other doctors I've seen since the accident, don't show anything in writing to this effect. In other words, no doctor had noted any official damage. Perhaps the treatment plan of rhinoplasty is suggestive enough, but I'm worried they will just deny me and I'll never be able to have the corrective surgery.

Employee's email asked "[w]ould it be possible to get some additional notes from Dr. Clymer to this effect?" The record on appeal does not include a response directly referencing Employee's request, but it includes a letter that Dr. Clymer sent to Employer dated February 4, 2016, which was accompanied by all of Employee's medical records. The letter stated, in part,

> In summary, [Employee] came to see me and her presenting complaint was of a "divit" [sic] in her nose. She has had 3 prior rhinoplasties, and on her intake questionnaire reports sinus problems and nasal polyps. She described to me an injury at work on 3/15 where she was struck in the nose by a serving tray, and now sees the divit [sic] again. With her extensive previous nasal surgery and other conditions it is not clear that her breathing difficulties, although possibly the result, are directly related to her injury.

Employer agreed to allow Employee to return to Dr. Shack for additional medical care deemed reasonable, necessary, and related to the work injury, but it denied the corrective rhinoplasty requested by Employee and declined to pay for medical treatment with Dr. Clymer, whose office had indicated he would not accept workers' compensation insurance. Employee filed a petition for benefit determination followed by a request for expedited hearing.

Following the hearing, the trial court issued an order stating "the central issue" to be "whether the surgical treatment [Employee] seeks – a corrective rhinoplasty – would be reasonably effective to correct the condition of her nose." The trial court made the following finding and holding:

[Employee] will likely succeed at a hearing on the merits in proving the surgical treatment is reasonable and necessary and, therefore, holds [Employer] must provide [Employee] a panel of surgeons specializing in rhinoplasty from which she may select one to evaluate the condition of her nose and provide surgery if the physician determines surgery would be reasonably effective to correct the nasal deformity that resulted from the workplace accident.

The order provided that if Employer "cannot identify a sufficient number of physicians to fill a panel, it shall request a waiver of the fee schedule from the Bureau." The trial court further ordered Employer to bear the costs of the evaluation as well as the corrective rhinoplasty "[i]n the event the physician chosen from the panel indicates corrective surgery would be an effective means for correcting her nasal deformity." In its assessment of the medical proof, the trial court stated:

Although none of the panel physicians who examined [Employee] recommended additional medical treatment, the medical records contain no explanation of why further treatment is unnecessary. In short, the Court questions why treatment is not recommended despite the presence of the nasal deformity: do the physicians think the procedure would be unsuccessful, or do they feel the damage is not serious enough to justify corrective surgery? The Court's questions on this issue are further amplified by Dr. Clymer's notes, which indicate corrective surgery could be performed.

Employer has appealed.

## Standard of Review

The standard we apply in reviewing a trial court's decision is statutorily mandated and limited in scope. Specifically, "[t]here shall be a presumption that the findings and conclusions of the workers' compensation judge are correct, unless the preponderance of the evidence is otherwise." Tenn. Code Ann. § 50-6-239(c)(7) (2015). The trial court's decision must be upheld unless the rights of a party "have been prejudiced because findings, inferences, conclusions, or decisions of a workers' compensation judge:

(A)  Violate constitutional or statutory provisions;
(B)  Exceed the statutory authority of the workers' compensation judge;

6

(C)     Do not comply with lawful procedure;

(D)     Are arbitrary, capricious, characterized by abuse of discretion, or clearly an unwarranted exercise of discretion; or

(E)     Are not supported by evidence that is both substantial and material in the light of the entire record."

Tenn. Code Ann. § 50-6-217(a)(3) (2015). Like other courts applying the standards embodied in section 50-6-217(a)(3), we will not disturb the decision of the trial court absent the limited circumstances identified in the statute.

## Analysis

Employer asserts that the medical proof is insufficient to support the order for medical benefits, that the trial court did not properly consider the presumption of correctness to which opinions of authorized physicians are entitled, and that it was error for the trial court to order Employer to provide a third panel of physicians. We agree that the proof was insufficient to support the order for medical benefits and that it was error for the trial court to order a third panel of physicians.

Initially, we reiterate that at an expedited hearing, an employee need not prove every element of his or her claim by a preponderance of the evidence, but must come forward with sufficient evidence from which the trial court can determine that the employee is likely to prevail at a hearing on the merits, consistent with Tennessee Code Annotated section 50-6-239(d)(1) (2014). *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). This lesser evidentiary standard "does not relieve an employee of the burden of producing evidence of an injury by accident that arose primarily out of and in the course and scope of employment at an expedited hearing, but allows some relief to be granted if that evidence does not rise to the level of a 'preponderance of the evidence.'" *Buchanan v. Carlex Glass Co.*, No. 2015-01-0012, 2015 TN Wrk. Comp. App. Bd. LEXIS 39, at *6 (Tenn. Workers' Comp. App. Bd. Sept. 29, 2015).

Tennessee Code Annotated section 50-6-204(a)(1)(A) (2015) provides that "[t]he employer or the employer's agent shall furnish, free of charge to the employee, such medical and surgical treatment . . . made reasonably necessary by accident as defined in this chapter." Furthermore, a work-related injury "causes . . . the need for medical treatment only if it has been shown to a reasonable degree of medical certainty that it contributed more than fifty percent (50%) in causing the . . . need for medical treatment." Tenn. Code Ann. § 50-6-102(14)(C) (2015). "'Shown to a reasonable degree of medical certainty' means that, in the opinion of the physician, it is more likely than not considering all causes, as opposed to speculation or possibility." Tenn. Code Ann. § 50-6-102(14)(D) (2015).

7

Tennessee Code Annotated section 50-6-204(b)(1) (2015) provides that "[w]here the nature of the injury . . . is such that it does not disable the employee but reasonably requires medical [or] surgical . . . treatment or care, medicine [or] surgery . . . shall be furnished by the employer." Moreover, "treatment recommended by a physician . . . selected pursuant to [§ 50-6-204(a)(3)] or by referral, if applicable, shall be presumed to be medically necessary for treatment of the injured employee." Tenn. Code Ann. § 50-6-204(a)(3)(H) (2015). Thus, at an expedited hearing where the issue concerns medical treatment offered by an unauthorized provider to an employee whose injury is not disabling, the employee has the burden of presenting sufficient evidence to show he or she is likely to prevail at trial in establishing that the offered treatment is reasonably required as a result of the work injury. *See* Tenn. Code Ann. § 50-6-204(b)(1).

Here, the fact that a work accident occurred and that Employee is entitled to the medical treatment made reasonably necessary as a result of that injury is undisputed. However, Employer contends that it satisfied its obligation to provide medical treatment by providing appropriate panels of physicians as well as a second opinion on the issue of surgery. Employee has expressed her belief from the outset of her medical treatment that the work injury has resulted in an alteration to the appearance of her nose. However, the record is devoid of any medical proof that any further treatment is reasonably required to correct any alleged defect resulting from the work injury. Indeed, as the trial court itself observed, "none of the panel physicians who examined [Employee] recommended additional medical treatment."

Moreover, not only is there no proof that any further treatment is reasonably required as a result of the work injury, but there is substantial proof to the contrary. The physician's assistant who examined Employee at CareSpot, Dr. Shack, and Dr. Ries have all opined that no surgery or additional treatment is necessary. Dr. Poe, the first physician to examine Employee after the incident, did not offer an opinion regarding whether surgery was needed or reasonably required. Rather, she referred Employee to a plastic surgeon to determine if surgery was necessary. In accordance with that referral, Employer provided a panel of plastic surgeons from which Employee selected her authorized treating physician, Dr. Shack. Although Dr. Shack opined in response to Employer's inquiry that Employee's contusion and need for a plastic surgery consultation arose primarily out of the March 4, 2015 work injury, he told Employee "I don't know that anything really needs to be done." He asked her to get her earlier records so he could review her previous operative notes, and he scheduled a CT scan "to evaluate the current status of her nasal anatomy." After reviewing photographs and CT films, Dr. Shack opined "there is no evidence of any underlying cartilaginous or bony injury," and he did not "think any surgical intervention would be indicated." Dr. Ries "did not appreciate any palpable bony stepoffs or significant deformities of the nasal bones," and he "recommended to [Employee] that no treatment be undertaken for her nose."

8

Even the plastic surgeon Employee saw on her own, Dr. Clymer, did not opine that she reasonably requires surgical intervention as a result of the work injury. He indicated a willingness to perform surgery, but even with Employee's request to his office "to get some additional notes from Dr. Clymer" to document "damage to be repaired . . . due to this incident," no proof was presented at the expedited hearing that the injury reasonably *requires* surgery as section 50-6-204(b)(1) mandates. In correspondence to Employer, Dr. Clymer stated that "[w]ith her extensive previous nasal surgery and other conditions it is not clear that her breathing difficulties, although *possibly* the result, are directly related to her injury." (Emphasis added). No physician other than Dr. Clymer suggested Employee may have breathing difficulties, and at the expedited hearing, Employee denied experiencing breathing difficulties. In short, and assuming Employee experiences breathing difficulties despite evidence to the contrary, the mere possibility that those breathing difficulties are a result of the work injury is an insufficient basis upon which to order Employer to provide a panel of medical specialists from which Employee can select a doctor to evaluate the effectiveness of corrective surgery.

Moreover, we have previously noted that an injured worker does not have a right to a panel of physicians solely for the purpose of an evaluation. "While an injured worker who meets the applicable statutory requirements is entitled to medical benefits, there is no 'right to a causation opinion' as such. If a trial court determines that medical benefits are appropriate, the court can order the initiation of such benefits. However, it is the parties' responsibility to secure expert opinions or other evidence necessary to address any applicable burden of proof." *Pool v. Jarmon Trans.*, No. 2015-06-0510, 2016 TN Wrk. Comp. App. Bd. LEXIS 1, at \*9-10 (Tenn. Workers' Comp. App. Bd. Jan 4, 2016) (citation omitted). In the present case, Employee has presented no proof to support an order for yet another panel of physicians, and we hold that the trial court exceeded its statutory authority in ordering a third panel of physicians.

In ordering benefits, the trial court relied on *Wilkes v. Resource Authority*, 932 S.W.2d 458 (Tenn. 1996), in which the employer was held responsible for surgery to correct a disfiguring scar on the employee's face, which the record revealed was detrimental to his ability to function normally despite the fact that it caused him no physical impairment. The trial court's reliance on this case is misplaced. In *Wilkes*, the Tennessee Supreme Court observed that the scar on the employee's face "made him overly conscious of his appearance. He [did] not express or assert himself like he did prior to the injury, [tried] not to call attention to himself in meetings or gatherings at work, and [had] difficulty looking at people during conversations at work and elsewhere." *Id.* at 460. The Court also noted that the employee altered his appearance, attempting "to hide the scar by wearing a beard." *Id.* In the instant case, there is no evidence that Employee's alleged deformity has an effect on her ability to function in her daily life.

9

More importantly, *Wilkes* relies on a portion of the statute that did not survive enactment of the Workers' Compensation Reform Act of 2013. The Tennessee Supreme Court, in finding the employer to be responsible for the requested benefits in *Wilkes*, cited the "disfigurement statute," Tennessee Code Annotated section 50-6-207(3)(E) (1995 Supp.). Prior to the Workers' Compensation Reform Act of 2013, that provision allowed recovery "[f]or serious disfigurement to the head, face or hands, . . . so altering the personal appearance of the injured employee as to materially affect the injured employee's employability." On this basis, the Court in *Wilkes* awarded benefits, finding the employee's scar affected his ability to function such that his employability was impaired. *Id.* at 461-62. Specifically, the Court stated that the impact the disfigurement had on the employee rendered the surgery "reasonably necessary." *Id.* Given that the Workers' Compensation Reform Act of 2013 does not include a provision specifically addressing benefits for disfigurement, the statutory foundation for *Wilkes* is inapplicable to the present case.

## Conclusion

For the foregoing reasons, we hold that the evidence preponderates against the trial court's conclusion that Employee would likely prevail at trial in establishing that surgical treatment for her nose is reasonably necessary as a result of the work injury. Further, we hold that, under the circumstances presented, the trial court exceeded its statutory authority in ordering that a third panel of physicians be provided. Accordingly, the trial court's decision is reversed and the case is remanded for any further proceedings that may be necessary.

10

**FILED**

**September 23, 2016**

**TENNESSEE
WORKERS' COMPENSATION
APPEALS BOARD**

**Time: 12:21 P.M.**



**TENNESSEE BUREAU OF WORKERS' COMPENSATION**
**WORKERS' COMPENSATION APPEALS BOARD**

| | | |
|---|---|---|
| Susan Coolidge | ) | Docket No. 2015-06-1333 |
| | ) | |
| v. | ) | State File No. 18273-2015 |
| | ) | |
| City Winery Nashville, LLC, et al. | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Appeals Board's decision in the referenced case was sent to the following recipients by the following methods of service on this the 23rd day of September, 2016.

| Name | Certified Mail | First Class Mail | Via Fax | Fax Number | Via Email | Email Address |
|---|---|---|---|---|---|---|
| Susan Coolidge | X | | | | X | 1444 Campbell Rd. Goodlettsville, TN 37072 suscoo@gmail.com |
| Emil L. (Chip) Story | | | | | X | cstoreyj@travelers.com |
| Joshua David Baker | | | | | X | Via Electronic Mail |
| Kenneth M. Switzer, Chief Judge | | | | | X | Via Electronic Mail |
| Penny Shrum, Clerk, Court of Workers' Compensation Claims | | | | | X | Penny.Patterson-Shrum@tn.gov |

Jeanette Baird
Deputy Clerk, Workers' Compensation Appeals Board
220 French Landing Dr., Ste. 1-B
Nashville, TN 37243
Telephone: 615-253-1606
Electronic Mail: Jeanette.Baird@tn.gov