FILED
**Sep 28, 2020**
**09:44 AM(CT)**
TENNESSEE COURT OF
WORKERS' COMPENSATION
CLAIMS



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
# AT NASHVILLE

| | | |
|---|---|---|
| PATRICIA HARRIS, | ) | |
| Employee, | ) | Docket No. 2019-06-1008 |
| | ) | |
| v. | ) | |
| | ) | |
| NASHVILLE CENTER FOR | ) | |
| REHABILITATION AND HEALING, | ) | |
| Employer, | ) | State File No. 31940-2019 |
| | ) | |
| and | ) | |
| PENNSYLVANIA | ) | |
| MANUFACTURERS INDEMNITY, | ) | |
| CO., | ) | Judge Joshua Davis Baker |
| Carrier. | ) | |

---

## COMPENSATION ORDER

---

Ms. Harris became injured at work while dodging a flying cockroach. Nashville Center for Rehabilitation and Healing (NCRH) denied the claim, asserting her injury was not compensable, as it did not arise primarily out of her employment. The Court held a compensation hearing on June 25, 2020, and reconvened for an attorney's fee hearing on August 10. Ms. Harris requested temporary and permanent disability benefits, past medical expenses, fees and discretionary costs. The Court holds Ms. Harris suffered a compensable injury that arose primarily out of her employment and orders NCRH to pay Ms. Harris temporary and permanent disability benefits and past medical expenses. The Court grants in part and denies in part her request for an attorney's fee and costs.

### Factual Background

This case concerns a fall at work complicated by an aggressive cockroach. Patricia Harris worked as a Certified Nursing Assistant at NCRH. During rounds on April 25, 2019, a large cockroach flew into her face as she walked down the hall. Taken by surprise,

1

Ms. Harris tried to deflect and dodge the offending insect and slipped and fell, breaking her right wrist. She went to the emergency room and received stabilizing treatment. The discharge records returned her to regular duty while wearing a splint.

After NCRH denied the claim, Ms. Harris, using her private insurance, began treating on her own with Dr. Jane Siegel. She first saw Dr. Siegel on May 3. Dr. Siegel confirmed a fractured wrist. She placed Ms. Harris in another splint, instructed her not to use the arm at work, and scheduled a return visit in two weeks.

When Ms. Harris returned, Dr. Siegel decided to surgically repair the wrist. She scheduled the surgery for May 21 and ordered Ms. Harris to remain off work until seen post-operatively. Ms. Harris returned for her post-operative appointment on May 31, and Dr. Siegel noted normal healing. Later, she released Ms. Harris with a one percent impairment rating to the body as a whole.

While NCRH disputed the compensability of Ms. Harris's injury, the parties stipulated to many pertinent facts and legal conclusions. These included medical causation, the one percent impairment rating, the reasonableness and necessity of the medical treatment, and Ms. Harris's weekly compensation rate of $450.77. Therefore, three legal issues remained: compensability, temporary disability benefits, and the request for an attorney's fee and discretionary costs.

NCRH denied the compensability of Ms. Harris's claim based on the argument that her injury did not arise primarily out of her employment because the flying cockroach was not a workplace hazard.

While no evidence suggested that the hospital had a cockroach infestation, Ms. Harris, the only testifying witness, said she saw roaches often in the hospital, including crawling in patients' beds. Further, she said that employees could file maintenance requests about roach or insect problems, but she produced no requests.

On the issue of temporary disability benefits, NCRH denied owing any benefits based on the asserted non-compensability of the claim. However, it alternatively argued for limiting these benefits because Ms. Harris was not totally incapacitated from working for the entire period she alleged.

Ms. Harris requested payment of temporary disability benefits from May 17 to September 6, 2019. At her deposition, Dr. Siegel said Ms. Harris could not do her "regular job" over this period. However, Dr. Siegel said she would have placed Ms. Harris on "one-handed duty" if she were a workers' compensation patient and allowed NCRH to decide whether to offer work under the restriction. She further stated that she normally kept patients with similar symptoms off work from the date of the surgery until the post-operative visit.

For her part, Ms. Harris said Dr. Siegel took her off work initially, then placed her on light duty. However, Ms. Harris said that NCRH had no light duty and tried to "make up" a position for her. According to Ms. Harris, Dr. Siegel took her off work completely when she learned of NCRH's actions. When asked whether Dr. Siegel took her off work completely from "May to September," she said yes.

The medical records also addressed work restrictions and Ms. Harris's work status. A medical record from May 17 ordered that Ms. Harris remain off work from that date until her post-operative appointment on May 31. The May 31 medical note made no mention of work restrictions. An office note from August 2, however, provided that Ms. Harris should continue therapy and was "still not ready to return to work." A September 6 office note stated Ms. Harris may return to full duty on September 10.

## Findings of Fact and Conclusions of Law

Ms. Harris requested temporary and permanent partial disability benefits as well as continuing medical care for her wrist. To prevail in this request, she must prove by a preponderance of the evidence that her wrist injury arose primarily out of and in the course and scope of her employment. *See* Tenn. Code Ann. § 50-6-239(c)(6) (2019); *Panzarella v. Amazon.com, Inc.*, No. E2017-01135-SC-R3-WC, 2018 Tenn. LEXIS 244, at *8 (Tenn. Workers' Comp. Panel May 16, 2018).

An injury arises primarily out of and in the course and scope of employment only if the employee shows by a preponderance of the evidence that the employment contributed more than fifty percent in causing the injury, considering all causes. Tenn. Code Ann. § 50-6-102(14)(B)-(D). An injury occurs "in the course of" employment if it takes place while the employee was performing a duty he or she was employed to perform. *Fink v. Caudle*, 856 S.W.2d 952, 958 (Tenn. 1993). The "in the course of employment" requirement focuses on the time, place, and circumstances of the injury. *Hill v. Eagle Bend Mfg. Inc.*, 942 S.W.2d 483, 487 (Tenn. 1997). As Ms. Harris was making rounds by walking the hall during her shift, the course and scope requirement is easily satisfied. The dispute turns on whether her injury arose primarily out of her employment.

The Tennessee Supreme Court held that "[a]n accidental injury arises out of employment when there is a causal connection between the working conditions and the resulting injury." *Fritts v. Safety Nat'l Cas. Corp.*, 163 S.W.3d 673, 678 (Tenn. 2005) (citing *Phillips v. A&H Constr. Co.*, 134 S.W.3d 145, 150 (Tenn. 2004)). This causal connection is based in rationality, so Ms. Harris must prove a rational link between the accident and the conditions of her work to establish liability. *See Hill,* at 487 (citing *Orman v. Williams Sonoma, Inc.,* 803 S.W.2d 672, 676 (Tenn. 1991)).

3

In preparing this order, this Court searched the decisions of all fifty states and found nothing directly on-point with the facts here. Narrowing the search results to Tennessee cases, the Court found that the only decisions of insect-related workers' compensation cases involved insect bites. *See, e.g.*, *Electro-Voice, Inc. v. O'Dell*, 519 S.W.2d 395 (Tenn. 1975) (Holding the employee's bee-sting injury at a factory and associated allergic reaction arose out of her employment.). However, even though the *Electro-Voice* employee suffered a compensable injury because of the sting, while Ms. Harris fell while avoiding a flying insect, the Court nonetheless finds its reasoning persuasive.

In *Electro-Voice*, the Court concluded the bees were part of the working environment. It based this finding on expert testimony concerning bees living in the walls of buildings during warm months, evidence of exterminations at the plant in an attempt to eradicate the bees, and testimony from the employee and others that they saw bees in the plant on numerous occasions before she was stung. *Id.* at 397.

Here, although Ms. Harris presented no expert testimony about a roach infestation, she did testify about seeing roaches in the hospital several times before her accident. The Court finds her testimony credible, and the employer offered no contrary evidence. The Court finds roaches were a part of the working environment.

The Court further finds that this was a hazard of employment. "Tennessee courts have consistently held that an employee may not recover for an injury occurring while walking unless there is an employment hazard, such as a puddle of water or a step, in addition to the injured employee's ambulation." *Bullard v. Facilities Performance Grp.,* 2018 TN Work. Comp. App. Bd. LEXIS 37, at *11 (Aug. 7, 2018) (citing *Wilhelm v. Kroger*, 235 S.W.3d 122, 128-29 (Tenn. 2007). Here, the roach became a hazard like a puddle or other object on the floor when it entered the building. The bug flew at Ms. Harris as she walked down the hallway. She tried to avoid it and fell, breaking her wrist. This was the cause of her accident, and the Court holds the accident was compensable.

Dr. Siegel treated Ms. Harris and assigned a one-percent impairment rating. The parties stipulated to the reasonableness and necessity of her treatment, so NCRH shall pay the costs of that treatment under the medical fee schedule. The parties also stipulated to the rating, so the Court awards Ms. Harris $2,028.47 (4.5 weeks x $450.77).

Turning to temporary total disability benefits, Ms. Harris requested benefits from May 17 through September 6, 2019. To recover these benefits, she must show (1) she is totally disabled and unable to work due to a compensable injury, (2) the work injury and inability to work are causally connected, and (3) the duration of the disability. *Jewell v. Cobble Constr. and Arcus Restoration*, 2015 TN Wrk. Comp. App. Bd. LEXIS 1, at *21 (Jan. 12, 2015). The Court holds she carried this burden.

The medical records contain several entries over a period beginning on May 17, 2019, when Dr. Siegel took her off work, until her post-operative appointment on May 31. The medical notes from that visit do not mention Ms. Harris's work status, and the notes from all later visits until August 2 also do not mention work status. The notes from the August 2 visit, however, stated that Ms. Harris is "still not ready to return to work" and should continue physical therapy.

Ms. Harris's testimony essentially followed the course of the medical notes with the exception of Dr. Siegel allowing her to return to work under restrictions for a short time, then taking her off work completely again. Ms. Harris said Dr. Siegel did this because NCRH had no light duty available but tried to "make up" a job for her. She provided the only testimony concerning the availability of light-duty work.

Dr. Siegel's testimony was less clear. She said she took Ms. Harris off work for the entirety of the subject period. However, she said she likely would have placed her on light duty that restricted her from using her injured arm after her post-operative appointment, had she been treating her as a workers' compensation patient. She further said that Ms. Harris could not perform her regular job over that period.

Considering all the evidence, the Court finds that Dr. Siegel took Ms. Harris off work for the entire period from May 17 to September 6. Although Dr. Siegel said she would have placed Ms. Harris on restricted duty if Ms. Harris were a workers' compensation patient, this is not what Dr. Siegel did. Further, according to Ms. Harris, NCRH could not have accommodated her even if Dr. Siegel had allowed her to work under restricted duty because NCRH had no light-duty work available but tried to create a position for her. NCRH provided no proof to rebut Ms. Harris's testimony, and the Court finds her credible.

The Court holds NCRH shall pay Ms. Harris accrued temporary disability benefits of $7,276.72 from May 17 to September 6, 2019, a period of sixteen weeks and one day.

Lastly, on the issue of an attorney's fee, the Court finds Ms. Harris's counsel provided good and valuable services and is entitled to a fee to be paid from Ms. Harris's recovery. The Court awards him twenty percent of the permanent disability award of $2,028.47, or $405.69, and twenty percent of the temporary disability award of $7,276.72, or $1,455.34. The total fee awarded is $1,861.03.

Ms. Harris also requested a fee for recovery of unpaid medical expenses. The Court declines this request. Ms. Harris's private insurance paid the costs of her treatment. The law does not provide for an attorney's fee unless the employee pays for the treatment out of pocket. *See Langford v. Liberty Mut. Ins. Co.*, 854 S.W.2d 100 (Tenn. 1995); *Wilkes v. Res. Auth. of Sumner Cnty.*, 932 S.W.2d 458 (Tenn. 1996).

5

Finally, Ms. Harris requested discretionary costs of $1,816.52. These included costs for Dr. Siegel's deposition, a deposition transcript, medical records, an impairment rating report, and travel expenses including a per diem. As travel expenses are expressly excluded under Tennessee Rule of Civil Procedure 54.04(2), the Court declines to award those costs of $276.87. The remaining expenses of $1,539.65 are recoverable under Rule 54.04(2), and the Court orders NCRH to pay them.

**IT IS, THEREFORE, ORDERED** as follows:

1. NCRH shall provide Ms. Harris with ongoing, reasonable and necessary medical treatment for her work-related wrist injury with Dr. Jane Siegel as the authorized treating physician.

2. NCRH shall pay Ms. Harris $2,028.47 in permanent partial disability benefits for a one-percent permanent partial disability.

3. NCRH shall pay Ms. Harris $7,276.72 in accrued temporary disability benefits.

4. NCRH shall pay Ms. Harris discretionary costs of $1,539.65.

5. Attorney Brett Rozell shall be paid a fee of twenty percent of the permanent partial disability award, or $405.69, and twenty percent of the temporary disability award, or $1,455.45.

6. Costs of $150.00 are assessed against NCRH under Tennessee Compilation Rules and Regulations 0800-02-21-.07 (2019), for which execution might issue as necessary.

7. Unless appealed, the order shall become final thirty days after issuance.

**ENTERED SEPTEMBER 28, 2020.**

_____
**Joshua Davis Baker, Judge**
**Court of Workers' Compensation Claims**

# APPENDIX

Exhibits:

1) Medical Records (document ID 40973)
2) Incident Report
3) Notice of Denial
4) Wage Statement
5) Employee's Medical Expenses
6) Correspondence from Dr. Jane Siegel
7) Deposition of Dr. Jane Siegel

Technical record:

1) Petition for Benefit Determination
2) Dispute Certification Notice
3) Request for Scheduling Hearing
4) Scheduling Order, December 9, 2019
5) Scheduling Order, April 27, 2020
6) Employee's Prehearing Statement
7) Employer's Prehearing Statement
8) Order Extending Pretrial Filings

**CERTIFICATE OF SERVICE**

I certify that a copy of this Order was sent as indicated on September 28, 2020.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|---|---|---|---|---|
| Brett Rozell | | | X | brozell@irma-law.com |
| Lauren Hall Richard Clark | | | X | lhall@eraclides.com rclark@eraclides.com |

_____

**PENNY SHRUM, COURT CLERK**
wc.courtclerk@tn.gov

8