IN THE SUPREME COURT OF TENNESSEE
SPECIAL WORKERS' COMPENSATION APPEALS PANEL
AT KNOXVILLE
Assigned on Briefs October 24, 2023

## NATACHA D. HUDGINS v. GLOBAL PERSONNEL SOLUTIONS INC., ET AL.

**Appeal from the Workers' Compensation Appeals Board**
**Court of Workers' Compensation Claims**
**No. 2017-01-0690   Thomas L. Wyatt, Judge**

**No. E2023-00792-SC-R3-WC – MAILED 02/01/2024**



FILED
MAR 5 2024
Clerk of the Appellate Courts
REc'd By _____

This is an appeal from the Workers' Compensation Appeals Board which affirmed a judgment of the Court of Workers' Compensation Claims finding that Appellee Natacha Hudgins' back injury was compensable and that the date of her maximum medical improvement was January 6, 2022. The appeal has been referred to the Special Workers' Compensation Appeals Panel for findings of fact and conclusions of law pursuant to Tennessee Supreme Court Rule 51. We affirm.

**Tenn. Code Ann. § 50-6-225(a) (2014) Appeal as of Right;**
**Decision of the Workers' Compensation Appeals Board Affirmed**

DWIGHT E. TARWATER, J., delivered the opinion of the court, in which DON R. ASH, SR. J., and ROY B. MORGAN, JR., SR. J., joined.

Tiffany B. Sherrill, Knoxville, Tennessee, for the appellants, Global Personnel Solutions, Inc., and American Zurich Insurance Company

Matthew G. Coleman, Cleveland, Tennessee, for the appellee, Natacha D. Hudgins

### OPINION

Employee sustained an injury to her right hand and right knee after tripping over a pallet in the course of her employment. Employer accepted the injuries as compensable and provided medical benefits, including eventually a partial knee replacement. After this surgery, Employee began experiencing back and hip pain and was ultimately recommended

to have lumbar back surgery, with two options presented by her doctor. The trial court ordered Employer to authorize both surgeries and held that Employee was entitled to temporary disability benefits. The Appeals Board affirmed this interlocutory decision.

Employer continued to contest the compensability of the spinal conditions, and the trial court determined after a compensation hearing that Employee proved by a preponderance of the evidence that the spinal conditions were compensable and identified the date of maximum medical improvement as January 6, 2022. Employer appealed to the Appeals Board, which affirmed the trial court on all counts. Employer now appeals to the Special Workers' Compensation Appeals Panel. After a careful review of the record and applicable law, we affirm the compensability of Employee's injuries as well as the date of maximum medical improvement. In doing so, we reconcile Tennessee's direct and natural consequence rule with the 2013 Workers' Compensation Reform Act and hold that Tennessee's direct and natural consequence rule requires a finding by a preponderance of the evidence that the employment contributed more than fifty percent to such consequential injuries for them to be compensable.

## Factual and Procedural Background

Natacha Hudgins ("Employee") worked for Global Personnel Solutions, Inc. ("Employer"), a staffing company, as a material handler packing batteries at Duracell Battery for fifteen years. On November 23, 2016, she tripped and fell over a pallet while walking up an aisle and landed on her right hand and knee. She timely filed a petition for benefits for her knee injury. Employer accepted the claim and authorized Employee to see an orthopedist, Dr. Carl Dyer. Dr. Dyer, selected by Employee pursuant to section 50-6-204(a)(3) of the Tennessee Code, referred Employee to Dr. Martin Redish, who performed a partial knee replacement in October 2017.

After the surgery, Employee continued to feel worsening pain in her leg, back, hip, and foot. When she placed pressure on her right foot, pain would radiate up her leg to her back and hip. Dr. Dyer referred her to orthopedist Dr. Adam Caputo in April 2019 for her back pain, and Dr. Caputo recommended back surgery.

Employee filed a second petition for benefit determination on July 24, 2019, claiming her back issues arose from her fall at work. Following a failed mediation, the mediator filed a dispute certification notice on October 4, 2019, and an expedited hearing was held on December 17, 2019. The main issues were whether Employee's back condition arose primarily out of and in the course and scope of employment, and whether she was entitled to temporary disability and medical benefits. The trial court entered an order holding Employee was likely to prevail on the compensability of the back issues and ordered Employer to authorize Employee's back surgery in addition to on-going treatment

- 2 -

of her knee and hip injuries. The trial court also ordered Employer to pay temporary partial disability benefits. Employer appealed the expedited hearing order, and the Appeals Board affirmed.

Dr. Caputo ultimately performed surgery on Employee's back in July 2020 and placed Employee at a maximum medical improvement for her lower back condition on August 4, 2021. Yet Employee still experienced pain. Thereafter, Dr. Caputo referred Employee back to Dr. Dyer, who then referred Employee to Dr. Jason Rogers. Dr. Rogers performed a total knee replacement and released Employee from his care on January 6, 2022, assigning her an impairment of twenty-two percent to the whole body, and placing her at maximum medical improvement on that date.

*Compensation Hearing*

A compensation hearing was held on December 13, 2022. The parties stipulated that Employee had reached maximum medical improvement for both of her injuries but disputed the specific date. Employee testified that prior to her accident, she had no difficulty doing her job, which included walking, climbing stairs, and lifting pallets. Employee has been using a walker since 2017 or 2018 and had not returned to work as of the date of the compensation hearing, as she was told she could not perform her duties with a walker. Employee further testified that she had no back pain prior to her work-related accident. At the time of the compensation hearing, Dr. Dyer was the treating physician for both her knee and back. Employee introduced into evidence the depositions of Dr. Dyer and Dr. Caputo to link her back pain to the workplace fall.

Dr. Dyer testified that Employee continued to have back problems after her partial knee replacement. Dr. Dyer opined to a reasonable degree of medical certainty that Employee's back problems developed and became more noticeable over time:

> It's pretty hard to separate some of the back symptoms from the joint symptoms because there was considerable overlap. Generally what happens in situations like this is that we treat the thing that . . . causes the most discomfort and the most functional limitation first and then see what you have left. So, what we had left were symptoms that related to her back and ongoing problems with joints with her knee and so on and so forth.

Dr. Dyer further explained that Employee's fall at work caused her back pain:

> *Indirectly* through altered gait more likely, plus, you know, she had

- 3 -

the injury, and like I said before, she probably had two things happen at one time. The joint problem was the primary symptom that brought her to the me in the first place. Then as we sorted through all that business, it became obvious that there were other issues [including the back injury] that were impacting on that whole diagnosis and treatment area.

(Emphasis added). When asked on cross-examination if the fall indirectly caused Employee's back injury, Dr. Dyer responded that "[b]y virtue of the fact that she had the problem initially, we would have to say that all this was *directly related* to the [workplace] injury based on the evolution of the whole system complex as it evolved over a period of time." (Emphasis added). He specifically testified that Employee experienced issues with her sciatic nerve due to the fall that would only become noticeable over time:

Based on the fact that the symptoms are related to the same extremity. Like I say, it's one of degree. The longer you walk with an abnormal gait, the more likely you are to have more back trouble. With a flexion contracture, what happens is the legs become unequal and that causes an increase in pelvic tilt, which when they move, it's tilted and there is extra pressure on one side and the movement of walking makes the pelvis move back and forth with respect to the rest of the body and that, in turn, acts like a grinding action, which would tend to aggravate an issue.

When asked if Employee's back symptoms were a "natural" result of the fall, Dr. Dyer responded:

I don't think you can say whether it's natural or unnatural. I think what you can say is that's the way it turned out to be *because of the traumatic nature of the slip and fall injury*, which brought her here in the first place. A lot of things happen in a fall.

(Emphasis added).

Dr. Caputo first testified that he could not give an opinion on causation as to Employee's back issues, because he did not begin treating her until 2019. However, Dr. Caputo stated that he "commonly see[s] patients who develop back conditions secondary to knee or hip problems." When specifically asked about Employee's medical history, he then stated "[b]ased on the thorough medical history that I was provided with, including prior records, the only explanation that I have been presented with that plausibly explains her back condition would be the [knee injury]."

After reviewing this evidence, the Court of Workers Compensation Claims found

- 4 -

that Employee's back injury "arose primarily out of and in the course and scope of employment" and was compensable. The trial court further determined Employee reached maximum medical improvement on January 6, 2022, when "she received an impairment rating after her total knee replacement" from Dr. Rogers.

Employer appealed and identified two issues: (1) whether the trial court erred in determining Employee's back injury was compensable, and (2) whether the trial court erred in determining the date of maximum medical improvement. The Appeals Board affirmed on both issues, including holding that the evidence was sufficient to find that Employee's back injury was compensable under the direct and natural consequence rule. Presiding Judge Conner wrote separately "to emphasize what [he] view[s] as an unresolved legal issue concerning an employee's burden of proof in circumstances where a subsequent or secondary medical condition develops after a work-related injury that the employee asserts was a direct and natural consequence of the compensable work injury."[1]

We are tasked with analyzing the same two issues in this opinion. The first issue requires us to reconcile Tennessee's direct and natural consequence rule with the standard articulated in the 2013 Workers' Compensation Reform Act.[2] As discussed below, we find that the application of the direct and natural consequence rule requires a finding that the subsequent injury—to be compensable—arose primarily out of and in the course and scope of employment. As such, it must be shown by a preponderance of the evidence that the employment contributed more than fifty percent in causing the alleged consequential injury. This requires an additional finding as compared to the traditional application of the rule, but it is what the statute requires. In this case, the evidence sufficiently supports the finding that Employee's consequential back injury was primarily caused by her employment-related accident. Thus, we affirm as to this issue. As to the second issue before us, we further affirm the determination of the date of maximum medical improvement, as the evidence does not preponderate against the trial court's conclusion.

## Standard of Review

Our review of the "findings of fact are de novo upon the record of the court of workers' compensation claims, accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise." Tenn. Code Ann. § 50-6-225(a)(2). Considerable deference should be afforded to the trial court when it had the opportunity to observe the witnesses and hear in-court testimony. *Madden v. Holland Grp.*

---

[1] The Appeals Board here cited another Appeals Board opinion (*Braden v. Mohawk Indus., Inc.*, No. 2019-08-0544, 2022 WL 625820, at *7 (Tenn. Workers' Comp. App. Bd. Mar. 1, 2022)) in calling for the Supreme Court to address the effect of the Reform Act on the direct and natural consequence rule.

[2] *See* Tenn. Code Ann. § 50-6-102(12) (West 2024).

*of Tenn.*, 277 S.W.3d 896, 900 (Tenn. 2009). "When the issues involve expert medical testimony that is contained in the record by deposition, determination of the weight and credibility of the evidence necessarily must be drawn from the contents of the depositions, and the reviewing court may draw its own conclusions with regard to those issues." *Foreman v. Automatic Sys., Inc.*, 272 S.W.3d 560, 571 (Tenn. 2008) (citing *Orrick v. Bestway Trucking, Inc.*, 184 S.W.3d 211, 216 (Tenn. 2006)). The trial court's conclusions of law, including the interpretation and application of the workers' compensation statutes, are reviewed de novo on the record with no presumption of correctness. *Mansell v. Bridgestone Firestone N. Am. Tire, LLC*, 417 S.W.3d 393, 399 (Tenn. 2013); *Seiber v. Reeves Logging*, 284 S.W.3d 294, 298 (Tenn. 2009). Workers' compensation statutes "shall not be remedially or liberally construed but shall be construed fairly, impartially, and in accordance with basic principles of statutory construction" and in a way that does not favor either the employee or the employer. Tenn. Code Ann. § 50-6-116. Employee bears the burden of proving all of the essential elements of her claim by a preponderance of the evidence. *Tindall v. Waring Park Ass'n*, 725 S.W.2d 935, 937 (Tenn. 1987). Additionally, the opinions of Employee's treating physicians "shall be presumed correct on the issue of causation but this presumption shall be rebuttable by a preponderance of the evidence." Tenn. Code Ann. § 50-6-102(12)(E).

**Analysis**

*Back Injury*

We first examine whether the trial court properly determined that Employee's subsequent back injury was compensable in accordance with Tennessee law. Employee contends that her back injury directly arose from her knee injury—which Employer agreed was compensable—and was thus also compensable. The lower courts here applied two different standards when evaluating the compensability of Employee's back injury. The trial court analyzed it as it would an injury "directly" suffered on-the-job and found that it "arose primarily out of and in the course and scope of employment." By contrast, the Appeals Board applied the "direct and natural consequence" rule to Employee's subsequent back injury and held that she was entitled to compensation as it was the direct and natural result of her compensable knee injury. Both courts below reached the right result for different reasons. While the trial court properly held that the back injury primarily arose out of and in the course and scope of employment, it failed to grapple with the nature and development of this injury, i.e. that it arose subsequent to her workplace fall. On the other hand, the Appeals Board properly considered the claim in light of the direct and natural consequence rule, but its analysis highlighted that this Court needs to clarify the interaction between the 2013 Workers' Compensation Reform Act and this common law rule.

- 6 -

The direct and natural consequence rule is a judicially-created doctrine holding that "a subsequent injury, whether in the form of an aggravation of the original injury or a new and distinct injury, is compensable if it is the direct and natural result of a compensable injury." *Anderson v. Westfield Grp.*, 259 S.W.3d 690, 696 (Tenn. 2008) (citing *Rogers v. Shaw*, 813 S.W.2d 397, 399–400 (Tenn. 1991)) (internal quotation marks omitted). It is premised on the idea that "[w]hen the primary injury is shown to have arisen out of and in the course of employment, every natural consequence that flows from the injury likewise arises out of the employment." *Id.* (quoting 1 *Larson's Workers' Compensation Law* § 10 (2004)). The direct and natural consequence rule is well-settled law and "an integral part of Tennessee's workers' compensation jurisprudence." *Id.* at 696.

However, the 2013 Workers' Compensation Reform Act ("Reform Act") redefined a compensable "injury" to require that employees prove by a preponderance of the evidence that the injury arose *primarily* out of and in the course and scope of employment."[3] Tenn. Code Ann. § 50-6-102(12) (emphasis added). Under the Reform Act, "[a]n injury 'arises primarily out of and in the course and scope of employment' only if it has been shown by a preponderance of the evidence that the employment contributed more than fifty percent (50%) in causing the injury, considering all causes." Tenn. Code Ann. § 50-6-102(12)(B).

It is clear that the application of the Reform Act's revised definition of "injury" to the compensability of subsequent injuries has raised confusion among parties and the courts below. And rightfully so, given that there may be a question as to whether the ordinary meaning of "every natural consequence" is the equivalent of the Reform Act's fifty-percent-plus-one employment contribution requirement "considering all causes." We find that the two are not in conflict. As long as the subsequent injury that is alleged to be a "natural consequence" flowing from a compensable injury can be shown to have arisen primarily out of and in the course and scope of employment, it, too, will be compensable under the Reform Act. This requires a finding by a preponderance of the evidence that the employment contributed more than fifty percent in causing an injury subsequent to a compensable injury for it to also be compensable. *See* Tenn. Code Ann. § 50-6-102(12)(B). Applying that standard, we now turn to the record in this case.

Employee relied primarily upon her medical records, the deposition testimony of Dr. Dyer and Dr. Caputo (her authorized treating physicians), and her own live testimony to establish the causation of her back injury. The trial court and the Appeals Board focused heavily on the testimony and medical records provided by Dr. Dyer. As Employee's authorized treating physician, Dr. Dyer's medical causation opinion is entitled to a presumption of correctness rebuttable by a preponderance of the evidence. *See* Tenn. Code

---

[3] Before passage of the Reform Act, the definition of "injury" did not include the word "primarily." Tenn. Code Ann. § 50-6-102 (2012).

Ann. § 50-6-102(12)(E). Dr. Dyer's treatment was initially focused on Employee's right knee, and he testified that her compensable knee injury resulted in a gait alteration, causing her pelvis and lumbar spine to grind together, aggravating a pre-existing spinal degenerative condition. During cross-examination in his deposition, Dr. Dyer initially stated that Employee's knee injury "indirectly" caused her back injury. However, when pressed by Employer's counsel, he clarified that "[the back and hip injuries were] *directly related* to the [knee] injury based on the evolution of the whole symptom complex as it evolved over time." (Emphasis added.) Dr. Dyer further testified that Employee's lumbar MRI results showed an "acute problem with the sciatic nerve problem," and that symptoms of such an acute injury could take as much as a year and half to manifest. Based on her MRI results, her back injury even "may have occurred right at the same time" as her knee injury, i.e. her work-related accident. While Dr. Dyer's testimony was inartful at times, it is clear that his opinion—given to a reasonable degree of medical certainty—is that Employee's workplace accident/knee injury directly caused her subsequent back injury. Employer offered little to no rebuttal evidence and undoubtedly fell short of overcoming the presumption of correctness owed to Dr. Dyer's testimony.

The courts below also relied on the testimony of Dr. Caputo, who began treating Employee's back injury in April of 2019. Dr. Caputo declined to provide a causation opinion as to Employee's back injury "only because [he] didn't see her until 2019." However, he did testify that "[b]ased on the thorough medical history that I was provided with, including prior records, the only explanation that I have been presented with that plausibly explains her back condition would be the knee [injury]."

Employee testified on her own behalf during the compensation hearing, which the trial court found to be "credible lay testimony." She testified that she had never had back pain prior to her fall, and she recalled noticing the back pain during physical therapy sessions for her knee injury. On cross-examination, Employee admitted that she was not sure of the exact start of her back pain. However, she was consistent in her testimony that she had no back pain prior to her work-related accident and developed severe pain after. The trial court found Employee's testimony credible as to the timing of her back injury in its causation analysis, and we must give considerable deference to that finding. *See Madden*, 277 S.W.3d at 900.

Weighing all of the evidence presented by the parties, we hold that Employee has carried her burden to show that her back injury is compensable under the Reform Act and the direct and natural consequence rule. A preponderance of the evidence shows that Ms. Hudgins' employment contributed more than fifty percent in causing her back injury, which was the direct and natural consequence of her compensable knee injury, considering all causes. Dr. Dyer's testimony in particular supports this conclusion, and Dr. Caputo and Employee's testimony lend it further weight. While Employer attempted to cast doubt onto

- 8 -

the witnesses' conclusions as to causation and timing, their testimony remained consistent—and in the case of Dr. Dyer was even bolstered—during cross-examination. Dr. Dyer testified that the back injury was directly caused by the knee injury, and Employer failed to overcome the presumption of correctness that his testimony must be afforded. Dr. Caputo, while declining to testify as to causation, was clear that the only thing in Employee's medical records that could have caused her back injury was her knee injury. Employee may not have known the exact day on which her back pain started, but she consistently and credibly testified that she never had any back pain before her workplace accident.

We hold that Ms. Hudgins has shown by a preponderance of the evidence that her employment contributed more than fifty percent in causing her subsequent back injury and is thus compensable. We therefore affirm the decision of the Appeals Board on this issue.

*Maximum Medical Improvement*

The second issue we must decide is whether the trial court and Appeals Board erred in their determination of the date of MMI. "An employee claiming an injury . . . shall be conclusively presumed to be at maximum medical improvement when the treating physician ends all active medical treatment and the only care provided is for the treatment of pain . . . that arose primarily out of a compensable physical injury." Tenn. Code Ann. § 50-6-207(1)(E). An employee reaches maximum medical improvement when he or she "has recovered to the extent possible given the nature of the injury." *Clifton v. Nissan N. Am.*, No. M2008-01640-WC-R3-WC, 2009 WL 2502044, at *7 (Tenn. Workers' Comp. Panel Aug. 18, 2009) (internal citations omitted).

Here, the parties stipulated that Employee reached MMI but disagree as to the date on which she reached it. Employer contends that Employee reached MMI on October 9, 2018, when Dr. Redish rated her impairment after performing her October 2017 partial knee replacement surgery. Yet, the record shows that Employee developed a gait disorder after this knee surgery and began noticing hip and back pain during physical therapy. She continued to receive medical treatment for her injuries, including both her knee and back injuries, from Dr. Dyer and Dr. Caputo. In July 2021, Employee was referred to Dr. Jason Rogers for a total knee replacement surgery. Dr. Rogers subsequently placed her at MMI on January 6, 2022, and assigned an impairment rating. Between October 2018 and January 2022, Employee was actively and continuously receiving treatment for her compensable injuries. Dr. Dyer testified that Employee was not at MMI after her partial knee replacement in October 2018 and that she was not "fully rehabilitated" immediately following her total knee replacement. The trial court below also ordered continued treatment and authorized the total knee replacement after Dr. Redish's finding of MMI following an expedited hearing granting temporary disability and medical benefits on

December 17, 2019.

The evidence does not preponderate against the trial court's determination of the date of maximum medical improvement as January 6, 2022. Therefore, we affirm.

## Conclusion

Based on a review of the record below, we affirm the judgment of the Workers' Compensation Appeals Board. Costs on appeal are taxed to Defendants-Appellants for which execution may issue if necessary.

DWIGHT E. TARWATER, JUSTICE